(No. 47084.—
(No. 47454.—

BARBARA KOBYLANSKI, a minor, Appellant, v. CHICAGO BOARD OF EDUCATION *et al.*, Appellees.—SUZANNE CHILTON, Appellee, v. COOK COUNTY SCHOOL DISTRICT NO. 207, MAINE TOWNSHIP, Appellant.

*Opinion filed March 29, 1976.—Rehearing denied May 27, 1976.*

GOLDENHERSH, J., WARD, C.J., and SCHAEFER, J., dissenting.

No. 47084.—

Jerome E. Cihak, Winkler & Fornelli, Ltd. and William J. Harte, Ltd., of Chicago (Donald J. Kerwin, of counsel), for appellant.

Morrill, Koutsky, Chuhak and Upton, of Chicago (Roland C. Upton and Philip J. McGuire, of counsel), for appellee Chicago Board of Education.

Lord, Bissell & Brook, of Chicago (Stephen A. Milwid, Richard E. Mueller, and John J. Berwanger, of counsel), for appellee James Lecos.

No. 47454.—

Baker & McKenzie, of Chicago (Francis D. Morrissey, John W. Dondanville, Daniel J. Cheely, and Norman J. Barry, Jr., of counsel), for appellant.

Albert F. Hofeld, Ltd., of Chicago (William J. Harte, Ltd., and Vincent Getzendanner, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This appeal involves two consolidated cases presenting the common issue of whether teachers and school districts can be held liable for injuries to students resulting from their allegedly negligent conduct, or whether the greater

burden of wilful and wanton misconduct must be proved in order to impose liability. Subsidiary issues raised by the various parties will be considered where they are necessary for a resolution of these cases.

In cause No. 47084, plaintiff, the father of Barbara Kobylanski, brought suit on her behalf against the Chicago Board of Education and James Lecos, a physical education instructor at Mark Twain Elementary School, for injuries she sustained during her seventh grade gymnasium class. Kobylanski, who was 13 years old at the time of the accident on November 18, 1968, suffered spinal injuries when she fell while attempting to perform a "knee hang" on steel rings suspended from the ceiling of the gymnasium. Prior to the accident, Lecos had instructed the students on the performance of this exercise. Kobylanski's amended complaint, which was filed under the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1967, ch. 85, par. 1—101 *et seq.*), alleged, *inter alia,* that the defendants negligently failed to provide proper instruction and supervision. The defendants answered the complaint, denying the allegations of negligence and setting forth as an affirmative defense section 34—84a of the School Code (Ill. Rev. Stat. 1967, ch. 122, par. 34—84a), which, they maintained, required a plaintiff to prove wilful and wanton misconduct in order to recover. Following the presentation of plaintiff's case, the trial court directed a verdict in favor of the defendants, and subsequently denied the plaintiff's post-trial motion for a new trial. The trial court found that Kobylanski had failed to prove the defendants were guilty of wilful and wanton misconduct. On appeal to the appellate court, the judgment of the circuit court was affirmed (*Kobylanski v. Chicago Board of Education,* 22 Ill. App. 3d 551), and we granted plaintiff's petition for leave to appeal. There is no contention made that the evidence presented at trial was sufficient to establish wilful and wanton misconduct.

Cause No. 47454 involves a suit initially filed by the father of the then minor Suzanne Chilton against Cook County School District 207 and Linda Walton, a physical education instructor, for injuries she sustained on April 25, 1968. Chilton was a 15-year-old freshman at Maine Township High School East and was injured during her physical education class while performing a trampoline maneuver known as a "front drop." As in the Kobylanski case, Chilton suffered spinal injuries. Prior to the accident, Chilton received personal instructions from Walton on the performance of this maneuver, since she had previously experienced difficulty in performing it. The second amended complaint, which was predicated upon negligence, was filed by plaintiff, Suzanne Chilton, at the close of the evidence at trial in October 1972. Count I alleged, basically, that District 207 failed to provide proper supervision, failed to require increased supervision as trampoline accidents occurred more frequently, and failed to test beginners in order to determine who was capable of taking a trampoline course. Count II charged that Walton failed to properly supervise the class, and forced Chilton to perform the maneuver after it became obvious that she lacked confidence and had considerable difficulty in performing it. The jury returned a verdict in favor of Chilton only against District 207. Following the entry of judgment on the verdict, the District filed a post-trial motion, but this motion was denied as were two previous motions for directed verdicts. These motions had attacked the sufficiency of plaintiff's complaint, arguing that it failed to allege that District 207 and Walton were guilty of wilful and wanton misconduct as required by section 24—24 of the School Code (Ill. Rev. Stat. 1967, ch. 122, par. 24—24). The trial court refused to instruct the jury that a wilful and wanton standard was applicable rather than a negligence standard, and expressed the belief that section 24—24 applied only to teacher-student disciplinary situations. On appeal to the appellate court, the judgment

of the circuit court was affirmed (*Chilton v. Cook County School District No. 207,* 26 Ill. App. 3d 459), and we granted the District's petition for leave to appeal. Chilton does not contend that the evidence was sufficient for the jury to find wilful and wanton misconduct had it been instructed as to the applicability of that standard.

The statutes relevant to these appeals are sections 24—24 and 34—84a of the School Code. The former section applies to cities with a population of less than 500,000 and the latter, to cities with a population greater than 500,000. The pertinent parts of the two statutes are identical, and they provide:

> "Teachers and other certificated educational employees shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to all activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." Ill. Rev. Stat. 1967, ch. 122, pars. 24—24 and 34—84a.

These statutes confer upon educators the status of parent or guardian to the students. None of the parties to these appeals disputes the fact that a parent is not liable for injuries to his child absent wilful and wanton misconduct. See *Mroczynski v. McGrath,* 34 Ill.2d 451, 455; *Nudd v. Matsoukas,* 7 Ill.2d 608, 619.

Kobylanski and Chilton concede that the statutes confer the status of parent or guardian upon teachers, but they maintain that they apply solely in disciplinary situations and not to the facts of the present appeals, which arose from nondisciplinary matters. In support of this position, they point out that the pertinent statutes are found in those portions of the School Code which deal with the employment and duties of teachers, and that the statutes are titled "Maintenance of discipline" (section 24—24) and "Teachers shall maintain discipline" (section

34—84a). Defendants, Chicago Board of Education, Lecos and District 207, contest this interpretation of the statutes and argue that the statutes clearly apply to the present situations, as illustrated by the third sentence of sections 24—24 and 34—84a, which provide that "[t]his relationship shall extend to all activities connected with the school program."

While the issue before this court is one of first impression, it has previously been considered in four appellate court cases involving suits against teachers, schools or school boards. In each, the appellate court held that section 24—24 requires a plaintiff to prove wilful and wanton misconduct in order to impose liability on educators. (See *Fustin v. Board of Education,* 101 Ill. App. 2d 113 (student player injured by an opposing player during basketball game); *Woodman v. Litchfield Community School District No. 12,* 102 Ill. App. 2d 330 (student kicked by fellow student while class was in session); *Mancha v. Field Museum of Natural History,* 5 Ill. App. 3d 699 (student assaulted by youths unaffiliated with his school while on an excursion to the Field Museum in Chicago); and *Merrill v. Catholic Bishop of Chicago,* 8 Ill. App. 3d 910 (student injured while cutting lengths of wire for art class as directed by teacher).) In *Merrill,* the plaintiff attempted to distinguish the applicability of section 24—24 by arguing that the statute did not relate to nondisciplinary situations and private schools. The appellate court briefly dismissed this argument by concluding that the activity in which the student was engaged was part of the school program and fell within the purview of the statute. We note that while Kobylanski and Chilton attempt to distinguish *Fustin, Woodman* and *Mancha* from the present factual situations, contending that the prior three cases involved disciplinary matters, a review of these cases discloses that they involved allegations of improper supervision and failure to supervise school activities.

Reviewing the language of the statutes, we find that

they were intended to confer the status *in loco parentis* in nondisciplinary as well as disciplinary matters. The second sentence in each of the two statutes provides that "[i] n all matters relating to the discipline in *and conduct of the schools* and the school children, [teachers] stand in the relation of parents and guardians to the pupils." (Emphasis added.) The statutes further indicate that this relationship applies to all activities in the school program. Since physical education is a required part of the academic curriculum (Ill. Rev. Stat. 1967, ch. 122, pars. 27—5 to 27—7), the classes in which Kobylanski and Chilton were injured are clearly "activities connected with the school program."

Moreover, "where a statute has been judicially construed and the construction has not evoked an amendment, it will be presumed that the legislature has acquiesced in the court's exposition of legislative intent." (*People v. Hairston*, 46 Ill.2d 348, 353.) In August 1975, the legislature amended sections 24—24 and 34—84a by Public Act 79—507 (effective October 1, 1975), by including within the first sentence of each section the requirement that teachers maintain discipline not only in the schools but on school grounds owned or leased by the school board and used for school activities. At the time the legislature passed this amendment, the present appeals had already been decided by the appellate courts, as well as the four appellate decisions previously mentioned. It is presumed, therefore, that since the legislature offered no further explanation of its intent regarding the scope of the parental relationship conferred by these statutes, it agreed with the interpretation given by the majority of appellate court decisions.

Furthermore, we note that in *People v. Ball*, 58 Ill.2d 36, this court held that, in situations involving the imposition of corporal punishment, teachers enjoy no greater rights nor are they entitled to any greater protection than parents. Conversely, it logically follows

that teachers, standing *in loco parentis,* should not be subjected to any greater liability than parents, who are liable to their children for wilful and wanton misconduct, but not for mere negligence.

We conclude, therefore, that sections 24—24 and 34—84a confer upon teachers and other certificated educational employees immunity from suits for negligence arising out of "matters relating to the discipline in and conduct of the schools and the school children." In order to impose liability against such educators, a plaintiff must prove wilful and wanton misconduct.

Kobylanski and Chilton have argued, alternatively, that should sections 24—24 and 34—84a immunize educators from liability for negligence, then such immunity is waived by section 9—103(b) of the Local Governmental and Governmental Employees Tort Immunity Act (hereafter Tort Immunity Act). It provides:

> Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the non-liability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act." Ill. Rev. Stat. 1967, ch. 85, par. 9—103(b).

It is undisputed that the Chicago Board of Education and District 207 had liability insurance policies in effect at the time of the accidents in question. Moreoever, the defendants do not contest the plaintiffs' interpretation that section 9—103(b) is a waiver of defenses and immunities if the local public entity has secured insurance coverage. They point out, however, and correctly so, that this waiver provision applies only to those defenses and immunities "provided in this Act." (See *Housewright v. City of LaHarpe,* 51 Ill.2d 357, 362-63.) The legislature's obvious intent to so limit the waiver provisions of section 9—103(b) is supported by section 2—111, which states:

"Nothing contained herein shall operate to deprive any public entity of any defense *heretofore existing and not described herein.*" (Emphasis added.) (Ill. Rev. Stat. 1967, ch. 85, par. 2—111.) Plaintiffs concede that the pertinent sections of the School Code were passed prior to the date of the Tort Immunity Act.

The Tort Immunity Act, in pertinent part, provides a local public entity with immunity from liability for injuries occurring in the use of public property. Examples of such immunity are illustrated by the following: A local public entity is not liable for injuries caused by the adoption of a plan or design of construction or improvement to public property (par. 3—103); for injuries caused by the failure to initially provide regulatory traffic control devices such as stop signs and speed restriction signs (par. 3—104); for injuries caused by the effect of weather conditions on the use of streets and highways (par. 3—105); for injuries where the liability is based on the existence of a condition of any public property intended to be used as a park, unless such local entity is guilty of wilful and wanton negligence proximately causing the injury (par. 3—106); for injuries caused by a condition of any hiking, hunting or fishing trail (par. 3—107); and for injuries caused by a failure to supervise an activity on or the use of any public property (par. 3—108). The immunity conferred upon educators by sections 24—24 and 34—84a, however, is not derived from the Tort Immunity Act, but is the result of a legislative determination that educators should stand in the place of a parent or guardian in matters relating to discipline, the conduct of the schools and the school children. It is this status as parent or guardian which requires a plaintiff to prove wilful and wanton misconduct in order to impose liability upon educators. Accordingly, the waiver provision of section 9—103(b) is inapplicable to the present factual situations.

Kobylanski and Chilton intimate in their briefs that to

accept an interpretation different from theirs as to the applicability of section 9—103(b) would subject sections 24—24 and 34—84a to "grave constitutional prohibitions." While they have not developed this contention to any depth, they apparently maintain that a contrary interpretation would make sections 24—24 and 34—84a special legislation in derogation of the constitutional prohibition of section 13 of article IV of the 1970 Illinois Constitution. Presumably this is based on the fact that teachers and school districts would be treated differently than other insured public entities or that a teacher would be treated differently than a school district employee who drives a bus.

A statute classifying persons or objects is not unconstitutional because it affects one class and not another, provided that it affects all members of the same class alike and provided that the classification is not arbitrary, but based upon some substantial difference in circumstances properly related to the classification. (*Hamilton Corp. v. Alexander*, 53 Ill.2d 175, 179; see also *People v. Palkes*, 52 Ill.2d 472.) While school districts may be in a class with other insured public entities and teachers may be in a class with other school employees, school districts and teachers are also in a class by themselves, because of the unique role they play in the educational development of the school age children of this State. Since all school districts and teachers are similarly treated, there is no violation of the constitutional prohibition against special legislation.

The resolution of these issues makes unnecessary a consideration of the other issues raised by the parties. The judgment of the appellate court in cause No. 47084 is affirmed, and the judgment in cause No. 47454 is reversed.

47084 — *Judgment affirmed.*
47454 — *Judgment reversed.*

MR. JUSTICE GOLDENHERSH, with whom MR. CHIEF JUSTICE WARD and MR. JUSTICE SCHAEFER join, dissenting:

Mr. Chief Justice Ward, Mr. Justice Schaefer and I dissent and would reverse the judgment in 47084 (Kobylanski) and affirm the judgment in 47454 (Chilton).

Section 24—24 of the School Code in pertinent part provides:

> "Sec. 24—24. Maintenance of discipline. Teachers and other certificated educational employees shall maintain discipline in the schools. In all matters relating to the discipline in and conduct of the schools and the school children, they stand in the relation of parents and guardians to the pupils. This relationship shall extend to activities connected with the school program and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." (Ill. Rev. Stat. 1967, ch. 122, par. 24—24.)

Section 34—84a (Ill. Rev. Stat. 1967, ch. 122, par. 34—84a), which applies to cities with a population greater than 500,000 (see Ill. Rev. Stat. 1967, ch. 122, par. 34—1), is headed "Teachers shall maintain discipline," and contains the same language as section 24—24.

It seems clear that the statutes apply only to discipline. To reach a contrary interpretation requires a distortion of the language of the second sentence of these sections. Properly construed, that sentence refers to "all matters related to the discipline in the schools and the conduct of the school children." The phrase "and conduct of the schools," which is emphasized by the majority opinion, does not stand alone. The words "discipline in" can not refer to "school children"; those words refer to the "schools." Similarly, the words "conduct of" do not relate to "the schools"; they refer to "the school children." If the phrase "conduct of the schools" is to be torn from its context and given independent significance, the following sentence, which provides that "[t]his relationship shall extend to all activities connected with the school program," is rendered redundant.

House Bill 691, which added sections 24—24 and 34—84a to the School Code, and House Bill 1863, enacting

the Local Governmental and Governmental Employees Tort Immunity Act, were passed and approved at approximately the same time (H.B. 691, passed June 28, 1965, approved July 13, 1965; H.B. 1863, passed June 30, 1965, approved August 13, 1965.) School districts were included within the term "local public entity" contained in the Tort Immunity Act (Ill. Rev. Stat. 1975, ch. 85, par. 1—206), and the Tort Immunity Act and the amendments to the School Code must be read *in pari materia.* As stated in the majority opinion (63 Ill.2d at 173) the Tort Immunity Act contains provisions which grant immunity to local public entities in some situations and limit liability to wilful and wanton conduct in others. Had the General Assembly intended to immunize a school district or its "teachers and other certificated educational employees" from liability for negligence in "nondisciplinary as well as disciplinary matters" it could have so provided.

The majority expresses the opinion that because, when it amended the statutes in August 1975, the General Assembly "offered no further explanation of its intent regarding the scope of the parental relationship conferred by these statutes" it "agreed with the interpretation given by the majority of the appellate court decisions." (63 Ill.2d at 172.) This newly discovered method for determining legislative intent is quaint, intriguing, but legally unsound. A much more sensible interpretation of legislative inaction, and one far more flattering to the General Assembly, is that being reasonable individuals they waited to see whether this court would resolve the conflict.

Nor do we agree that there was a "majority of appellate court decisions" which held that sections 24—24 and 34—84a applied to all activities connected with the school program. The rationale of *Fustin v. Board of Education,* 101 Ill. App. 2d 113, was that the action of the defendant's employees and agents had involved the exercise of discretion, that under section 2—201 of the Tort Immunity Act, which provided:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused" (Ill. Rev. Stat. 1965, ch. 85, par. 2—201),

they were not liable for acts of negligence, and that by reason of section 2—109 of the Act, which provided:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable" (Ill. Rev. Stat. 1965, ch. 85, par. 2—109),

the defendant district was not liable. In *Woodman v. Litchfield Community School District No. 12,* 102 Ill. App. 2d 330, the appellate court specifically stated that the action complained of was done in the course of maintaining discipline. Neither opinion decided the question presented in these cases.

Although, in the decision of these cases, it should not be necessary to reach the question of the constitutionality of sections 24—24 and 34—84a of the School Code, as interpreted by the majority, their validity is, at best, doubtful. The principle is firmly established that classifications designed to confer immunity on a local governmental entity must be based, not on the nature of the entity, but on the type of activity or function involved. (*Harvey v. Clyde Park District,* 32 Ill.2d 60; *Stubblefield v. City of Chicago,* 48 Ill.2d 267.) As construed by the majority, defendants would not be liable for negligent conduct which would subject other local governmental units to liability.

Although not made an issue in these appeals, we consider it appropriate to comment upon one additional matter. The majority, and apparently the parties, appear to accept as settled law "that a parent is not liable for injuries to his child absent wilful and wanton misconduct. See *Mroczynski v. McGrath,* 34 Ill.2d 451, 455; *Nudd v. Matsoukas,* 7 Ill.2d 608, 619." (63 Ill.2d at 170.) On

the contrary, this court has never decided that question. In *Nudd,* wilful and wanton misconduct was alleged (7 Ill.2d at 610), and the language to which the majority opinion refers (7 Ill.2d at 619) does not hold that parental immunity bars an action based on negligence. *Mroczynski* explains what was said in *Nudd* but does not decide the question.