DONNELL PALMER *et al.*, Plaintiffs-Appellants, v. MOUNT VERNON TOWNSHIP HIGH SCHOOL DISTRICT 201, Defendant-Appellee.

Fifth District    No. 5—92—0806

Opinion filed March 8, 1995.

LEWIS, J., dissenting

James B. Wham, of Wham & Wham, of Centralia, and Michael J. Hanagan, of Hanagan & Dousman, of Mt. Vernon, for appellants.

Thomas E. Jones and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Donnell Palmer and Suzanna Palmer, appeal from a jury verdict in favor of defendant, Mount Vernon Township High School District 201, and from the denial of their post-trial motions. Plaintiffs' complaint alleged that defendant's negligence proximately resulted in an eye injury to plaintiff, Donnell Palmer (Donnell), a star player on defendant's basketball team. The following issues are raised by this appeal: (1) whether the trial court abused its discretion by refusing to give two of plaintiffs' jury instructions; (2) whether the jury's verdict is against the manifest weight of the evidence; (3) whether the trial court erred in not granting a judgment notwithstanding the verdict; and (4) whether defense counsel's expression of his personal opinion in closing argument amounts to reversible error. We reverse and remand.

## I

At trial, Donnell testified that he had seen Kareem Abdul-Jabbar of the Los Angeles Lakers, a professional basketball team, and opponents of Mt. Vernon's basketball team wear goggles. Also, Donnell was hit on the cheekbone under his left eye by another player's elbow during a tournament in December 1985, but he was not seriously injured. Donnell said that he had concerns that he might sustain an eye injury. Sometime in January 1986, Donnell was in the gym shooting baskets before that day's practice session. A teammate, Eric Robinson, came into the gym carrying a pair of "Rec Specs" eye goggles. Upon Donnell's request, Eric allowed Donnell to try on the goggles. Donnell continued to wear the goggles as he shot baskets for another

5 to 10 minutes before practice and before the rest of the team arrived. Coach Lee Emery came into the gym and saw Donnell wearing the goggles. The coach told Donnell not to wear them because someone else might get hurt. Donnell took off the goggles. After the January 1986 practice session and before Donnell's injury, he did not try to wear any kind of eye-protection equipment, assuming Coach Emery would not let him. On February 4, 1986, during a practice session, Donnell was hit in the left eye by another player's finger. As a result of the injury, Donnell ultimately lost all vision in his left eye. Before the February 1986 injury, no one from Mt. Vernon Township High School had warned Donnell that he should provide his own eye-protection equipment.

On cross-examination, Donnell testified that when he tried on the goggles in January 1986, he was experimenting because he had not worn any before that time. When Coach Emery told Donnell to take off the goggles, Donnell did not tell the coach why he wanted to wear them. Donnell did not tell the coach, the school superintendent, or anyone else from the school district that he felt he needed some type of eye protection when playing basketball. Before February 4, 1986, Donnell was aware of the possibility that he could get poked in the eye. During his basketball career with Mt. Vernon Township High School, Donnell had never seen another Mt. Vernon player wear any kind of eye-protection equipment during practice or games.

Eric Robinson, whose eye goggles Donnell wore in January 1986, testified about the January incident essentially the same as Donnell, except Eric thought that the whole team was present in the gym at the time the coach told Donnell not to wear the goggles and Donnell had worn the goggles for 20 to 30 minutes instead of only 5 to 10 minutes. He also thought that the coach told Donnell not to wear the goggles because they would be a distraction, rather than because they might hurt someone.

Coach Lee Emery testified as an adverse witness. He was the varsity basketball coach during the 1985-86 basketball season. Coach Emery testified that although he had tried hard to remember the incident in January 1986, when Donnell tried to wear eye goggles, he did not remember any such incident. His description of the events of February 4, 1986, otherwise concurred with Donnell's description. Coach Emery testified that high school basketball in Illinois is governed by rules set forth by the Illinois High School Association. One of the rules in effect during the 1985-86 basketball season was that during games, the referees were required to prohibit players from wearing equipment which, in the referees' judgment, was dangerous to any of the players. When asked if defendant had ever

considered whether protective eye equipment ought to be furnished to any of its basketball players, Coach Emery responded that he would not know. Finally, he testified that although blinding injuries in basketball are unusual, players do get poked in the eye occasionally.

Plaintiffs introduced the deposition testimony of two physicians and one rehabilitation expert and rested their case. Defendant then moved for a directed verdict, based in part upon the Illinois Supreme Court case decided just one month before the jury trial of this cause, *Sidwell v. Griggsville Community Unit School District No. 4* (1992), 146 Ill. 2d 467, 588 N.E.2d 1185. The trial court denied the motion.

After plaintiffs rested, defendant called Tommy Hayes to testify. Tommy was a junior on the basketball team the year Donnell was hurt. Tommy and Donnell were close friends, "just like brothers." Tommy did not remember Donnell or any other player asking Coach Emery for eye goggles in the 1985-86 basketball season. Tommy also did not remember Donnell wearing any eye goggles or Coach Emery telling any of the players not to wear eye goggles at any time before the February 4, 1986, accident. Although he saw Donnell numerous times immediately after the accident and through the years, Donnell never said anything to him about Coach Emery telling him not to wear eye goggles.

Jim Woodward was also a basketball coach for defendant during the 1985-86 basketball season. He testified that none of the players requested eye-protection equipment in his presence that season. He did not know of any high school that provided eye-protection equipment for basketball players, but, occasionally, he had seen individual players from some of the teams wearing eye goggles. He recalled the February 4, 1986, incident but did not recall Donnell ever wearing eye goggles during any practice session.

Coach Lee Emery testified again that he did not recall Donnell wearing eye goggles at any practice session, and he did not recall telling Donnell not to wear eye goggles. He could not recall ever having a player request to wear eye goggles, but he would permit a player to wear them if the player feared an eye injury. At defense counsel's request, Coach Emery tried on a pair of eye goggles that were exactly like the goggles Donnell wore in January 1986. Coach Emery testified that he did not like the goggles because they did not fit properly, they restricted his peripheral vision, and he had a "blind spot" in his field of vision when wearing them. In Coach Emery's opinion, peripheral vision is very important in basketball. He also felt that the wearing of goggles would be more unsafe than not wearing them. After the accident, he saw Donnell several times, but Don-

nell never indicated that he was upset because the coach had prohibited him from wearing the goggles.

On cross-examination by plaintiffs' attorney, Coach Emery was shown a picture in the 1988 Mt. Vernon Township High School yearbook of a freshman basketball player wearing eye goggles, to impeach his earlier testimony that he had never had a player request eye goggles. On redirect examination, Coach Emery stated that he had never prohibited Donnell Palmer from wearing eye goggles.

Defendant rested its case, and Donnell was recalled as a rebuttal witness. Donnell testified that he did not tell anyone about the incident in which the coach told him not to wear the eye goggles, stating that "there was no reason why really," and that his attorney told him not to talk to anyone about the case. Donnell did not remember when he first talked to an attorney regarding this case.

At the close of the evidence, defendant renewed its motion for a directed verdict and again cited the *Sidwell* case (*Sidwell*, 146 Ill. 2d 467, 588 N.E.2d 1185), arguing that as to plaintiffs' second and third allegations of negligence against defendant (failure to warn and failure to allow Donnell to use equipment to prevent serious injury), plaintiffs were required to prove wilful and wanton misconduct by defendant in order to recover, but that plaintiffs had not presented evidence to that effect. The trial court again denied defendant's motion for directed verdict.

## II

Plaintiffs' first assignment of error on appeal is that the trial court committed reversible error when it refused to give the jury two instructions tendered by plaintiffs. Neither instruction is contained in Illinois Pattern Jury Instructions, Civil (3d ed. 1992) (hereinafter IPI Civil 3d). The trial court refused both instructions for the reason that no case in Illinois specifically set forth the rule of law stated by either instruction. The instructions tendered by plaintiffs and refused by the court were:

> *Plaintiffs' number 15*: "Where students are engaging in school activities, it is the duty of the school district to exercise ordinary care to warn the students that they should furnish their own equipment to prevent serious injuries."

> *Plaintiffs' number 16*: "Where students are engaging in school activities, it is the duty of the school district to exercise ordinary care to allow the students to use equipment to prevent serious injuries."

Plaintiffs tendered the instructions based on *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82

Ill. 2d 415, 412 N.E.2d 447. Another instruction, also based on *Lynch*, was given by the court over defendant's objection. Plaintiffs' instruction number 14 stated:

> "Where students are engaging in school activities, it is the duty of the school district to exercise ordinary care to furnish equipment to students to prevent serious injuries."

Plaintiffs argue on appeal that the duties set forth in instructions number 15 and number 16, to warn students and allow students to use equipment, are "lesser-included" duties and logical extensions of the duty set forth in *Lynch*, the duty to furnish students with equipment.

The trial court also gave plaintiffs' instruction number 21, which informed the jury:

> "The Plaintiff, Donald [*sic*] Palmer, claims that he was injured and sustained damage and that the defendant was negligent in one or more of the following respects:
>
> A. That the defendant school district did not furnish Donnell Palmer with protective eye equipment, when it knew or should have known that such act or omission endangered his safety.
>
> B. That the defendant school district did not warn Donnell Palmer that he should furnish his own protective eye equipment, when it knew or should have known that such act or omission endangered his safety.
>
> C. That the defendant school district did not allow Donnell Palmer to use protective eye equipment, when it knew or should have known that such act or omission endangered his safety."

Plaintiffs were allowed to argue their three theories of the school's negligence to the jury in their closing argument.

Plaintiffs point out: "The jury must accept the judge's determination as to what is or is not a duty. This is a question of law for the court to determine." (*Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 462 N.E.2d 502.) Plaintiffs argue that because the jury was instructed as to defendant's duty on only one of plaintiffs' three theories of liability against defendant, the trial court effectively barred the jury from considering plaintiffs' other claims based on the duty to warn and the duty to allow use of protective eye equipment.

Defendant responds that the refused instructions were properly denied because they failed to state the law in Illinois and because other instructions adequately apprised the jury of defendant's duties to students and of plaintiffs' theories of liability against defendant, and therefore plaintiffs were not prejudiced in any way by the court's refusal to give either instruction.

In the case at bar, defendant clearly had the duty to exercise ordinary care to furnish equipment to students to prevent serious

injuries. Plaintiffs' instruction number 14 is taken almost verbatim from the *Lynch* case. (*Lynch*, 82 Ill. 2d 415, 412 N.E.2d 447.) Although plaintiffs' instruction number 14 was not a pattern instruction, Illinois Supreme Court Rule 239 states:

> "Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction shall be used, unless the court determines that it does not accurately state the law. Whenever IPI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given should be simple, brief, impartial and free from argument." 134 Ill. 2d R. 239(a).

The decision to give or deny a jury instruction is discretionary with the trial court, and a new trial should be granted for the refusal to give a tendered instruction only if a party's right to a fair trial has been seriously prejudiced. (*Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 549 N.E.2d 1295.) If the trial judge determines that an instruction should be given on a subject, but the pattern instructions do not contain an applicable instruction, then a nonpattern instruction is permissible if it is simple, brief, impartial, and nonargumentative. (134 Ill. 2d R. 239(a); *Poelker v. Warrensburg-Latham Community Unit School District No. 11* (1993), 251 Ill. App. 3d 270, 621 N.E.2d 940.) The standard for deciding whether a trial court abused its discretion in giving or denying jury instructions is whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles. *Thompson*, 193 Ill. App. 3d 188, 549 N.E.2d 1295.

The courts have long held that teachers and other certified educational employees, such as coaches, enjoy immunity from civil negligence suits absent wilful and wanton misconduct. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705.) Sections 24—24 and 34—84a of the School Code (the Code) (Ill. Rev. Stat. 1985, ch. 122, pars. 24—24, 34—84a (now 105 ILCS 5/24—24, 34—84a (West 1992))) provide this limited immunity "[i]n all matters relating to the discipline in and conduct of the schools and the school children" (Ill. Rev. Stat. 1985, ch. 122, par. 24—24 (now 105 ILCS 5/24—24 (West 1992))), because teachers and other certified educational employees "stand in the relation of parents and guardians to the pupils." (Ill. Rev. Stat. 1985, ch. 122, par. 24—24 (now 105 ILCS 5/24—24 (West 1992)).) This relationship extends to all activities connected with the school program, "including all athletic and extracurricular programs, and may be exercised at any time for the safety

and supervision of the pupils in the absence of their parents or guardians." (Ill. Rev. Stat. 1985, ch. 122, par. 34—84a (now 105 ILCS 5/34—84a (West 1992)).) When a coach, as a certified educational employee, rather than a school district, is sued for furnishing defective equipment, the coach is entitled to immunity from ordinary negligence under the Code. *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 395 N.E.2d 538.

School districts, however, can be sued in their own capacity and held liable for ordinary negligence in furnishing defective equipment or for not furnishing necessary equipment. (*Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323.) But school districts have vicarious immunity when the cause of action against the school district is predicated upon the ordinary negligence of a teacher. (*Sidwell v. Griggsville Community Unit School District No. 4* (1992), 146 Ill. 2d 467, 588 N.E.2d 1185; *Poelker*, 251 Ill. App. 3d 270, 621 N.E.2d 940.) "As in any employment situation, school districts vicariously benefit from a teacher's immunity when a cause of action against the school district is predicated on the negligence of a teacher." *Sidwell*, 146 Ill. 2d at 472-73, 588 N.E.2d at 1188.

In *Gerrity*, the supreme court recognized that public policy strongly favors imposing an obligation upon school districts to insure that the equipment it provides is fit for the purpose intended and that a school district can be held liable for ordinary negligence in furnishing defective equipment to students (*i.e.*, ill-fitting and inadequate football helmets for a football game). (*Gerrity*, 71 Ill. 2d 47, 373 N.E.2d 1323.) In *Sidwell*, the school district was held liable for negligently allowing a rut to be formed on a playground, for failing to fill in the rut, and for allowing plaintiff to use the part of the playground where the rut existed. The supreme court made it very clear that the school district was being held liable for its own negligence in not having the rut filled, not the negligence of the teacher in charge of the plaintiff. (*Sidwell*, 146 Ill. 2d 467, 588 N.E.2d 1185.) In contrast, the school district was immune in *Poelker* because of vicarious immunity from the action or inaction of school officials in failing to adequately supervise a track meet in which the plaintiff was hit in the head by a discus. *Poelker*, 251 Ill. App. 3d 270, 621 N.E.2d 940.

■ In this context we must distinguish the nature of the activities that these cases examine. Our supreme court, in effect, has established two categories of activities with differing liability consequences. One category constitutes those cases in which the supervision activity of certified educational personnel is the focus of attention and, thus, the doctrine of *in loco parentis* enacted by the

General Assembly in sections 24—24 and 34—84a of the Code (Ill. Rev. Stat. 1989, ch. 122, pars. 24—24, 34—84a (now 105 ILCS 5/24— 24, 34—84a (West 1992))) shields that certified educator from liability due to ordinary negligence and thus vicariously shields the school district. (*Kobylanski*, 63 Ill. 2d 165, 347 N.E.2d 705.) The other category, in which this case properly falls, is that of a furnishing case, an instance in which the focus of activity is not the supervision of the students in the activity, but the furnishing of adequate equipment or the failure to furnish any equipment at all or, as in this case, preventing the furnishing of equipment, with resultant injury. (*Gerrity*, 71 Ill. 2d 47, 373 N.E.2d 1323; *Lynch*, 82 Ill. 2d 415, 412 N.E.2d 447.) In this category of cases our supreme court has clearly stated that the duty of a school district is grounded in ordinary negligence and the duty to furnish adequate equipment.

The supreme court in *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 347 N.E.2d 705, applied the doctrine of *in loco parentis* contained in section 24—24 of the Code to the nondisciplinary supervisory activities of certified educational personnel. The plaintiff in *Kobylanski* alleged ordinary negligence on the part of a gym teacher in failing to supervise an activity. Our supreme court later, in *Gerrity v. Beatty* (71 Ill. 2d 47, 373 N.E.2d 1323), distinguished *Kobylanski* and the cases following it. The *Gerrity* case dealt with a high school football injury, the plaintiff alleging that the district committed ordinary negligence in furnishing an inadequate helmet. The supreme court stated:

> "As distinguished from the foregoing cases, count VI in the case at bar did not allege negligence arising out of the teacher-student relationship in matters relating to the teacher's personal supervision and control of the conduct or physical movement of a student, but instead alleged negligence in connection with what we consider to be the separate function of furnishing equipment which was alleged to be inadequate, ill fitting and defective and which was known, or which in the exercise of ordinary care should have been known, to be liable to cause injury to the plaintiff. The public policy considerations in authorizing, and indeed encouraging, teachers to have broad discretion and latitude in the former situation quite clearly do not apply with as much force to the latter. On the contrary, public policy considerations argue rather strongly against any interpretation which would relax a school district's obligation to insure that equipment provided for students in connection with activities of this type is fit for the purpose. To hold school districts to the duty of ordinary care in such matters would not be unduly burdensome, nor does it appear to us to be inconsistent with the intended purposes of sections 24—24 and

34—84a of the School Code." *Gerrity*, 71 Ill. 2d at 52-53, 373 N.E.2d at 1326.

The supreme court followed the *Gerrity* decision with its opinion in *Lynch*, in which the allegation against the district was a failure to provide effective equipment, in fact, providing no equipment to the students. Our supreme court stated:

"We also do not think that, because the defendant did not furnish any equipment to the students, it is absolved from liability for failing to provide effective equipment. Instead, we think a school district has an affirmative duty, where students are engaging in school activities, whether they are extracurricular, or formally authorized as part of the school program, to furnish equipment to prevent serious injuries." (*Lynch*, 82 Ill. 2d at 434, 412 N.E.2d at 459.)

*Lynch* thus established an affirmative duty to provide equipment in the furnishing category.

Also relevant to our consideration in the furnishing category is *Bertetto v. Sparta Community Unit District No. 140* (1989), 188 Ill. App. 3d 954, 544 N.E.2d 1140. *Bertetto* was a negligence action filed against the school district for failure to provide adequate equipment. A disabled student was thrown from a wheelchair provided by the student's parents. The court stated:

"[I]f the equipment supplied by parents is not adequate for a particular activity, we believe that the District must provide alternative equipment which is adequate. *** [T]he School District may not evade its duty by attempting to shift responsibility for providing adequate equipment to the parents of the children in its charge." *Bertetto*, 188 Ill. App. 3d at 958, 544 N.E.2d at 1143.

■ Since the case at bar is a furnishing case, not a supervision case, the question before the trial court was not defendant's failure to supervise a sports activity, but rather defendant's failure to furnish or allow to be furnished appropriate safety equipment for the conduct of the sports activity. The court's instructions were therefore inadequate, since plaintiffs' instructions number 15 and number 16, as well as number 21, accurately explain the law and should have been given.

Jury instructions are intended to be a comprehensive and accurate statement of the law applicable to the case so as to guide the jury in making its determinations. The trial court in the instant case decided to give instruction number 21 but refused number 15 and number 16, although paragraph (b) of instruction number 21 mirrors plaintiffs' instruction number 15 and paragraph (c) of instruction number 21 mirrors plaintiffs' instruction number 16. The jury instructions as given explained to the trier of fact that plaintiffs have

a claim as stated in instruction number 21, but the court is saying there is no duty that claim is based on by the absence of instructions number 15 and number 16. Also, referring to the discussion above as to furnishing cases, we conclude that instructions number 15 and number 16, along with instruction number 21, adequately stated the law. Failure to give these instructions seriously prejudiced plaintiffs' right to a fair trial, and therefore, a new trial should be granted. *Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 549 N.E.2d 1295.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

CHAPMAN, J., concurs.

JUSTICE LEWIS, dissenting:

A kindergarten class located somewhere in the Fifth Appellate District in the Fall of 1995:

TEACHER: "Listen up children. We are going to play musical chairs, so I have to give you the warning. Now, now, don't groan so loud. I know that you have heard the warning a hundred times, but the appellate court says that I must give it to you each time we play. Besides, this may be the last time you hear it, because the school board is meeting next week to decide if all school activities involving running or jumping will be banned due to the high cost of insurance and equipment. Now, it is my duty to warn you that you can be seriously injured playing musical chairs. You might break an arm, get a tooth knocked out, or receive a brain concussion. Remember the old song about the toe bone connected to the foot bone, the foot bone connected to the ankle bone, and so on. Well, you could break all those bones mentioned in the song, if you play. In fact, you could possibly break any bone in your body, tear any muscle, pull a ligament or tendon, and rip a cartilage. I know that you don't know what a ligament or cartilage is, but the court only said we had to warn you. Now there are all types of equipment that prevent injuries. Look at the dummy here. See the football helmet, hockey mask, mouthguard, shoulder pads, rib pads, hip pads, knee pads, and high-top shoes. All of this equipment could prevent injuries, and you can furnish your own. We have already told your parents that they can buy you football pads. I want you to be sure and tell your parents that we are serious. We are only doing what the court ordered. Sally, I want you

to be sure and tell your daddy that we do not need a psychiatrist, as he strongly suggested. Now we have one problem. Johnny has brought his football helmet and shoulder pads, so we have to wait until the principal decides if these pads might endanger the rest of you, if he collides with you. That reminds me, if any of your parents cannot afford to buy you all of the equipment that is displayed on the dummy and if you wish to wear such while playing games, please take home this paper requesting financial aid and have your parents fill it out and sign it. The school board needs to know how many need financial help before they vote next week between a new roof or football pads. Well, recess is about up so we can only play one game, if the principal gets here in the next five minutes."

I do not mean to be disrespectful toward my colleagues, or to be callous about the terrible injury plaintiff received, but I do not know of a better way to make my point within the five-page limitation (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994) than the aforesaid scenario. It should be made perfectly clear that the jury was given an instruction, plaintiffs' instruction number 14, stating, "[I]t is the duty of the school district to exercise ordinary care to *furnish* equipment to students to prevent serious injuries." (Emphasis added.) The jury, by its finding of not guilty, indicated that the defendant had not violated its duty to exercise ordinary care to *furnish* equipment to prevent a serious injury. How can this be a furnishing-equipment case when the jury was instructed and decided against that specific assertion?

I even question whether the trial court should have instructed the jury as to the duty to furnish goggles. It may be, as in *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447, which involved playing football without a helmet, that a sport can be so inherently dangerous that it should be obvious that certain equipment should be provided. Few sports or activities are as dangerous as football, but you can still receive serious injuries in any sporting activity. In fact, anytime there is running or jumping, someone can and often will be hurt. You can furnish the best equipment possible and warn of every danger, and there still will be injuries in sports. How can there be athletic competition, if all of the participants look like the Mummy's Ghost?

It should be noted that the jury was given the pattern negligence instructions and that the jury was instructed about plaintiffs' theory in plaintiffs' instruction number 21. These instructions were held to be sufficient in *Poelker v. Warrensburg-Latham Community Unit*

*School District No. 11* (1993), 251 Ill. App. 3d 270, 621 N.E.2d 940, even though plaintiffs' non-IPI instructions were not given.

The majority says that under plaintiffs' instruction number 15, which says, "Where students are engaging in school activities, it is the duty of the school district to *warn* the students that they should furnish their own equipment to prevent serious injuries," this duty to warn is a furnishing case. (Emphasis added.) Only teachers can give warnings, so it is obviously a supervisory case, which means that the school district is immune from liability under the holding in *Sidwell v. Griggsville Community Unit School District No. 4* (1992), 146 Ill. 2d 467, 588 N.E.2d 1185. Moreover, I dare say that the school district or teacher could warn the students all day, every day, that football is dangerous and that students should furnish their own helmets but still be held not to have discharged its duty to furnish equipment. A school district cannot discharge its duty to furnish equipment in an inherently dangerous sport by a mere warning. Further, it is ridiculous to be required, as in the case at bar, to warn of a danger that a student is aware of. It does not take a genius to foresee that you could have your eye put out in any sport or activity in which there is possible contact between the participants or the participants and the equipment used.

Plaintiffs' instruction number 16 says, "Where students are engaging in school activities, it is the duty of the school district to exercise ordinary care to allow the students to use equipment to prevent serious injury." Yet the majority cites *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 373 N.E.2d 1323, which held that a school district can be liable for ordinary negligence in furnishing defective equipment. The school district would have to check every piece of equipment furnished by the students. How can a school district conduct such tests? Further, how do you allow one student to wear equipment to protect himself, if the equipment would be a danger to other students (*i.e.*, a football helmet in a basketball game).

The majority wants to impose absolute liability on a school district for any child that is injured. It would be better and much simpler if the majority had frankly held that. School boards, teachers, the legislature, and the public could at least understand it and do something about such a ruling.

Meanwhile, the school districts will muddle along attempting to avoid liability by giving inane warnings (it reminds me of the warnings flight attendants make) to students who will not be listening or who do not understand. More learning time and school budgets will be eaten up with futile attempts by administrators and teachers to comply with the inconsequential. Meanwhile, juries and trial judges

will be trying to make sense out of the nonsensical, plaintiffs' instructions number 15 and number 16. We can all foresee the eventual result. Sports or activities involving running and jumping will be banned in schools, because someone will get hurt and school districts cannot afford the liability. "Tag" and "Ring Around the Rosie" will soon be as taboo as crack and pot on school grounds.