ROBERT F. KNAPP, Indiv. and as Special Adm'r of the Estate of Robert J. Knapp, Deceased, Plaintiff-Appellant, v. MICHAEL S. HILL, Defendant and Counterplaintiff-Appellant (Bremen Community Unit School District No. 228, Defendant-Appellee and Counterdefendant-Appellee).

First District (5th Division)   Nos. 1—94—4376, 1—94—4382 cons.

Opinion filed November 3, 1995.

Timothy T. McLaughlin, Ltd., of Oak Lawn, for appellant Robert F. Knapp.

Larry R. Wikoff, of Brody, Gore, Fineberg & Wikoff, Ltd., of Chicago, for appellant Michael S. Hill.

Francis J. Leyhane III, of Condon & Cook, of Chicago, for appellee.

JUSTICE T. O'BRIEN delivered the opinion of the court:

Plaintiff, Robert F. Knapp, individually and as special administrator of the estate of Robert J. Knapp (Robert), appeals from an order of the circuit court dismissing certain counts of plaintiff's second amended complaint with prejudice. The circuit court held that plaintiff failed to state a cause of action against Bremen Community Unit School District No. 228 (school district) under the theory of *respondeat superior*. The circuit court also found that the school district's failure to adequately supervise students did not constitute wilful and wanton misconduct as a matter of law. We affirm.

Because the circuit court granted the motion to dismiss pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), the factually sufficient allegations in the complaint are taken as true.

On May 1, 1992, Robert and defendant Michael Hill (Michael) were students at Bremen High School and classmates in an automotive repair class. In accordance with school policy, some of the class members furnished their own automobiles from use in course instruction. Each of these students was responsible for bringing his or her automobile into the shop area at the beginning of class and removing it at the end of class. Only those students who furnished a vehicle for the class were permitted to leave the classroom.

On the day in question, three students, including Michael and Charles Yohfeld, provided their own cars for use in class. As class ended, the teacher told the students to clean up the premises before repairing to his desk to fill out paperwork. Yohfeld, meanwhile, proceeded to drive his car from the shop area and return it to the school parking lot. Despite the fact that Robert was not permitted to leave the classroom at this time, he nevertheless hid in the back seat of Yohfeld's car. After reaching the parking lot, Robert walked back to the classroom.

As Robert returned, Michael was backing his car down the ramp adjacent to the classroom's overhead door. When Michael stopped at the bottom of the ramp to change gears, Robert jumped on the hood of the car "in such a manner that he was lying on his stomach across the hood, with his hands holding onto that portion of the hood closest to the front windshield *** with his feet extending across the hood diagonally toward the [passenger side] headlight." Michael im-

mediately accelerated and drove his car through the school parking lot at a high rate of speed. He then abruptly hit the brakes, causing Robert to be thrown from the hood of the car. When Robert fell, he struck his head on the pavement in front of the automobile and was rendered unconscious. Robert was taken to a local hospital, where he died four days later as a result of the injuries sustained on May 1, 1992.

On May 2, 1994, plaintiff filed a six-count second amended complaint against Michael and the school district. In count III, plaintiff sought recovery from the school district for wrongful death under the theory of *respondeat superior*. Plaintiff claimed that the driver of the vehicle, Michael, acted as an agent of the school district because he was returning the vehicle to the school's parking lot at the request of his teacher.

In count V, plaintiff asserted that the school district was directly liable for its own wilful and wanton misconduct. Plaintiff maintained that the school district should have properly supervised the students and otherwise prevented "horseplay."

Finally, in count VI, plaintiff requested damages pursuant to the Rights of Married Persons (Family Expense Act) (750 ILCS 65/15 (West 1992)). Under this count, plaintiff, individually, repeated the allegations of wilful and wanton misconduct and sought reimbursement for medical expenses and funeral costs.

The school district thereafter moved to dismiss each of these counts on the grounds that plaintiff (i) failed to factually allege that Michael was an agent of the school district and (ii) failed to factually allege that the school district acted wilfully and wantonly. The circuit court granted the motion with prejudice, and plaintiff appealed.

## I

On appeal, plaintiff initially submits that Michael was an agent for the school district for the limited purpose of bringing his car into the shop area at the start of class and returning to the parking lot at the end of class. Plaintiff points out that the school district, *vis-a-vis* the shop teacher, was responsible for directing the method and manner of removing automobiles from the shop area, and thus exercised the requisite control to establish a principal-agency relationship. Moreover, plaintiff argues, "it is reasonable to infer that, if it so desired, the SCHOOL DISTRICT could have established a policy that required the shop teacher, or some other school employee, to drive the cars in and out of the shop area. *** Control of the process of providing these educational tools was the exclusive province of the SCHOOL DISTRICT."

Although we agree with plaintiff that the school district did in fact exercise control over its students, including the method and manner of removing automobiles from the shop area, we nevertheless find that such control alone is insufficient to establish a principal-agent relationship under the circumstances alleged in the complaint.

■ A principal-agent relationship is a legal concept founded upon a consensual and fiduciary relationship between two parties. (*Gunther v. Commonwealth Edison Co.* (1984), 126 Ill. App. 3d 595, 598, 467 N.E.2d 1104.) The test of agency is whether the purported principal has the right to control the manner and method in which the work is carried out by the agent and whether the agent is capable of subjecting the principal to personal liability. (*Illinois Nurses Association v. Illinois State Labor Relations Board* (1990), 196 Ill. App. 3d 576, 582, 554 N.E.2d 404, *appeal denied* (1990), 132 Ill. 2d 545, 555 N.E.2d 376.) Ordinarily, the key consideration in determining whether an agency relationship exists is whether the principal had the right to control the activities of the agent. *Anderson v. Boy Scouts of America, Inc.* (1992), 226 Ill. App. 3d 440, 443-44, 589 N.E.2d 892, *appeal denied* (1992), 145 Ill. 2d 631, 596 N.E.2d 625.

We have no quarrel with the general proposition that the determinative factor in an agency relationship often revolves around the element of "control." In the instant case, however, we are faced with the somewhat unique situation where the "control" necessary to support the creation of a principal-agent relationship is the same "control" implicit in the nature and the undertaking of the education process.

■ Educators, of course, are entrusted with a certain degree of autonomy in discharging their obligations as teachers, including the "maintenance of a sound learning atmosphere" as well as the "orderly conduct of the schools." (*Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 51, 373 N.E.2d 1323.) Indeed, the Illinois School Code provides that teachers and other certified educational employees "stand in the relation of parents and guardians to the pupils." (105 ILCS 5/24—24 (West 1992); see also 105 ILCS 5/34—84a (West 1992).) The Code further declares that this "relationship shall extend to all activities connected with the school program *** and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." (105 ILCS 5/24—24 (West 1992); see also 105 ILCS 5/34—84a (West 1992).) In addition, a teacher's control over the activities of his or her students is not limited merely to the teacher's disciplinary and supervisory authority in the school setting. It encompasses, rather, the entire range of the student's course of instruction.

By nature, then, the education process imposes upon the instructor a degree of control and supervision over the manner and method of the student's work. In this case, the teacher directed Michael to bring his automobile into the shop area at the beginning of class and to remove it at the end of class. This was done not as a manifestation of the school district's intent to vest its students with authority to manage some affair on behalf of the school district, thereby allowing the student to become an agent of the school district; rather, it was done as part and parcel of the student's course of instruction.

Plaintiff concedes as much in his complaint. In count III, plaintiff alleges that "the act of bringing the automobile into the shop, and removing it, was a necessary part of the course of instruction being conducted by the School District, and a part of the regularly scheduled class activity." He also acknowledges that "the removal of the automobiles from the shop class was a necessary aspect of furnishing the automobiles for the purpose of instructing the students in automobile mechanics." The "control" element here, therefore, arising as it does from the fulfillment of duties inherent in the teaching function, manifests a teacher-student relationship exclusive of the principles of agency law. Thus, the ordinary concepts of agency and *respondeat superior* do not apply in this case. See *Booker v. Chicago Board of Education* (1979), 75 Ill. App. 3d 381, 385, 394 N.E.2d 452 (holding teacher's temporary designation of student as hall monitor does not render student the agent and servant of the teacher or school district). Accord *Wickey v. Sparks* (Ind. 1994), 642 N.E.2d 262 (holding high school's granting students permission to drive to vocational school subject to high school handbook requiring safe operation of vehicles does not establish agency relationship where principal does not disclose to third parties its intent to create agency); *Hanson v. Kynast* (1986), 24 Ohio St. 171, 494 N.E.2d 1091 (holding student athlete who injures opposing player does not act as agent of university even though coach may have instructed athlete as to rules of the game since limited amount of control is necessary part of participating in sport).

In reaching this conclusion, we do not mean to imply that a high school student could never under any circumstances become an agent for a school district, such as where a teacher directs a student to perform some act for the benefit of the school district which is wholly unrelated to the education process. What may or may not be related to the education process is, of course, not susceptible to enumeration in advance. Nor do we mean to pass upon the possibility of agency in teacher-student relationships of a different character, such as a medical intern who, under the guidance and direction of a hospital affili-

ated with a teaching institution, provides professional services to patients as a practitioner of the medical profession. See *Christensen v. Des Moines Still College of Osteopathy & Surgery* (1957), 248 Iowa 810, 82 N.W.2d 741.

It is sufficient for present purposes, however, that Michael's act of removing his automobile from the shop area was, in the words of the plaintiff, inextricably connected with the "course of instruction being conducted by the School District, and a part of the regularly scheduled class activity."

Finally, we recognize that the existence of facts giving rise to a principal-agent relationship is generally a question reserved for the trier of fact. (*Anderson v. Boy Scouts of America, Inc.* (1992), 226 Ill. App. 3d 440, 443-44, 589 N.E.2d 892.) Nevertheless, a plaintiff must still plead facts, which, if proved, could establish the existence of an agency relationship. (*American Environmental, Inc. v. 3-J Co.* (1991), 222 Ill. App. 3d 242, 248, 583 N.E.2d 649.) We find in this case that plaintiff has failed to factually allege that Michael was an agent of the school district for liability purposes under the doctrine of *respondeat superior*, and we therefore affirm the order of the circuit court dismissing count III against the school district.

## II

We next address whether the complaint sufficiently alleges wilful and wanton misconduct directly on the part of the school district.

■ In Illinois, the General Assembly has long provided teachers and other certified educational employees with limited immunity from civil actions based upon negligence absent wilful and wanton misconduct. (105 ILCS 5/24—24, 34—84a (West 1992) (limited immunity applied to teachers and other educational employees in cities with a population over 500,000); *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 172-73, 347 N.E.2d 705.) This immunity extends to "all matters relating to the discipline in and conduct of the schools and the school children." (105 ILCS 5/34—84a (West 1992).) As previously noted, the legislature has declared that teachers "stand in the relation of parents and guardians to the pupils" and that "[t]his relationship [extends] to all activities connected with the school program, including all athletic and extracurricular programs, and may be exercised at any time for the safety and supervision of the pupils in the absence of their parents or guardians." 105 ILCS 5/34—84a (West 1992).

The public policy behind protecting teachers from liability for the performance of their duties in a negligent manner was set forth in *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 172, 395 N.E.2d 538, in which the court stated:

"[W]e would burden [educators] to the extent that a teacher might become immobile in the performance of his obligations. They would 'not be free and unhampered in the discharge of their duties, since they would live in fear that each judgment they made would bring a lawsuit.' (Judge, *Tort Immunity Act: Only Certain Immunities Are Waived by Public Entity's Purchase of Insurance*, 63 Ill. B.J. 386, 387 (1975).) Moreover, a proliferation of such actions for negligence would drain teachers' time, encourage second-guessing teachers' judgments by courts, and quite possibly discourage persons from the career of teaching."

Moreover, the legislature, in granting teachers and other certified educational employees limited immunity pursuant to the School Code, has bestowed upon school districts vicarious immunity from prosecution when a school official's conduct is at issue. (*Poelker v. Warrensburg-Latham Community Unit School District No. 11* (1993), 251 Ill. App. 3d 270, 280, 621 N.E.2d 940, *appeal denied* (1994), 154 Ill. 2d 569, 631 N.E.2d 718.) In other words, a school district may not be sued if the cause of action against the school district is predicated upon the ordinary negligence of a teacher. (*Sidwell v. Griggsville Community Unit School District No. 4* (1992), 146 Ill. 2d 467, 472-73, 588 N.E.2d 1185; *Palmer v. Mount Vernon Township High School District 201* (1995), 269 Ill. App. 3d 1056, 1063, 647 N.E.2d 1043.) Thus, to impose tort liability against a school district for the conduct of educators in regard to discipline and conduct of schools, plaintiff must allege wilful and wanton misconduct. *Holsapple v. Casey Community School District C-1* (1987), 157 Ill. App. 3d 391, 393, 510 N.E.2d 499.

■ To state a cause of action for wilful and wanton misconduct on the part of the school district, plaintiff here is required to factually allege that the conduct of the shop teacher involved more than " 'mere inadvertence, incompetence, unskillfulness, or a failure to take precautions ***.' " (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 449, 593 N.E.2d 522, quoting Restatement (Second) of Torts § 500, Comment *g*, at 590 (1965).) Instead, plaintiff must allege a conscious choice of action on the part of the teacher, " 'either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.' " *Burke*, 148 Ill. 2d at 449, quoting Restatement (Second) or Torts § 500, Comment *g*, at 590 (1965).

■ In this case, plaintiff alleges that the school district "knew, or reasonably should have known," one or more of the following: (i) students were subjected to a substantial risk of injury in the shop class because they were permitted in the area of the overhead door

and ramp during the clean-up period; (ii) students had on prior occasions left the classroom during class time while automobiles were being removed from the class; (iii) students previously drove their automobiles in a dangerous and reckless manner on the school campus when removing automobiles from the automotive shop class; (iv) students were previously injured during the removal of automobiles or there was a substantial risk of injury to the students during removal of the automobiles; (v) students, particularly those in their "teens," had on prior occasions engaged in horseplay, including sitting on the hood, roof and trunk of a moving automobile; and (vi) students previously left the classroom during clean up by hiding in the automobiles. Plaintiff also emphasizes, among other things, that on the day in question "there was an increased risk of students violating the school policy prohibiting them from leaving the classroom while automobiles were being removed during 'clean-up' in light of the lure of the summer like weather."

We note that in several of the foregoing allegations plaintiff essentially claims that the school district was derelict in providing adequate supervision of the students, either when the students were in class or removing their automobiles to the parking lot. However, "a teacher's mere act of leaving children unsupervised will not be sufficient to establish willful and wanton misconduct." (*Jackson v. Chicago Board of Education* (1989), 192 Ill. App. 3d 1093, 1100, 549 N.E.2d 829.) Instead, plaintiff must allege that the teacher was aware or should have known that the lack of supervision posed a high probability of serious harm or an unreasonable risk of harm. (*Pomrehn v. Crete-Monee High School District* (1981), 101 Ill. App. 3d 331, 335, 427 N.E.2d 1387.) The general allegation that a teacher should have known the harm would occur without adult supervision is insufficient to satisfy this standard. *Jackson v. Chicago Board of Education* (1989), 192 Ill. App. 3d 1093, 1100-01, 549 N.E.2d 829.

In light of the foregoing principles, the above allegations are insufficient to adequately allege wilful and wanton misconduct. In *Albers v. Community Consolidated No. 204 School* (1987), 155 Ill. App. 3d 1083, 1086, 508 N.E.2d 1252, a case involving a student's unprovoked attack upon another student, the court held that teachers cannot be charged with the duty of anticipating and guarding against a student's sudden wilful and wanton misconduct. The court noted that "[a] teacher cannot supervise each and every child at all times while in school or while engaged in a school-related activity. [Citation.] The general potential for danger with groups of children is not sufficient standing alone to sustain a claim for wilful and wanton misconduct." (155 Ill. App. 3d at 1086.) Although the facts of the case

may be different, the legal analysis applies with equal force to the instant case.

Moreover, we find the only allegation which even remotely supports a claim for wilful and wanton misconduct, *i.e.*, that the school district knew or should have known that students have previously been injured or there was a substantial risk of injury during the removal of automobiles from the shop area, to be a mere conclusion premised upon unfounded speculation. We do not know what the previous injuries were, when they occurred (if in fact they even occurred), or how the school district is charged with knowledge of them. As such, we do not find allegations of a deliberate intention to harm or an utter indifference to the welfare of the plaintiff, at least on the mere basis that a shop teacher directed his students to return their automobiles to a school parking lot.

Accordingly, the circuit court correctly ruled that plaintiff's complaint does not set forth a cause of action against the school district sounding in wilful and wanton misconduct. We therefore affirm the dismissal of counts V and VI as to the school district.

■ Finally, we note that the circuit court also dismissed Michael's counterclaim for contribution against the school district. The counterclaim was itself based, verbatim, on plaintiff's count V. In light of our decision with respect to count V, we necessarily affirm the circuit court's dismissal of Michael's counterclaim.

For the foregoing reasons, we affirm the order of the circuit court dismissing counts III, V, and VI of plaintiff's complaint as directed against the school district, as well as Michael's counterclaim for contribution.

Affirmed.

GORDON and McNULTY, JJ., concur.