FOURTH DIVISION
March 31, 2008

1-06-1256

| | | |
|---|---|---|
| ERIK T. DANIELS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County, |
| Plaintiff-Appellant, | ) | Law Division |
| | ) | |
| v. | ) | No. 01 L 9115 |
| | ) | |
| PATTON CORRIGAN; YELLOW CAB | ) | Honorable Jennifer Duncan-Brice, |
| MANAGEMENT, INC., d/b/a Yellow Cab | ) | Judge Presiding |
| Company; SHAHZAD MAHLIK; YELLOW | ) | |
| CAB COMPANY; YELLOW CAB AFFILIATION, | ) | |
| INC.; YELLOWONE, LLC; YELLOWTWO, LLC; | ) | |
| CRA CAB COMPANY, d/b/a Metro Yellow; | ) | |
| YELLOW CAPITAL CORPORATION; YELLOW | ) | |
| CAB SERVICES OF AMERICA; YELLOW | ) | |
| HOLDINGS INC.; TRANSIT CAPITAL, LLC; | ) | |
| TRANSIT FUNDING GROUP; and LOWER | ) | |
| CROSS CORPORATION, | ) | |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (American Country Insurance Company; Stamford | ) | |
| Capital Group; the Dorothy Corrigan Trust; | ) | |
| Muhammed Atif; and Nana Dada, Inc., | ) | |
| | ) | |
| Defendants) | ) | |

JUSTICE MURPHY delivers the opinion of the court:

Plaintiff, Erik T. Daniels, was injured when the car he was driving was struck by a Yellow

Cab driven by Shahzad Malik and owned by Nana Dada, Inc. Plaintiff filed a negligence suit

against Malik, Nana Dada, and its owner, Muhammed Atif. He also filed suit against, *inter alia*, Patton Corrigan, Yellow Cab Affiliation, YellowOne, YellowTwo, CRA Cab, f/k/a Yellow Cab Company, Transit Capital, and Transit Funding Group. These defendants filed a motion for summary judgment, which the trial court granted, finding that defendants did not control Nana Dada or the operation of the cab at the time of the accident.

## I. BACKGROUND

On July 7, 2001, plaintiff was injured in an accident with a taxicab owned by Nana Dada and driven by Malik, who leased the cab from Nana Dada. Nana Dada carried $350,000 of liability coverage, the minimum required by the City of Chicago. Plaintiff filed a complaint alleging negligence under theories of joint venture, vicarious liability, and alter ego. According to the complaint, the City of Chicago amended the Chicago Municipal Code to limit the number of taxicab licenses, or medallions, that a single entity could own to 25% of the outstanding medallions. The complaint further alleged that even though Yellow Cab Company was required to divest itself of a number of medallions as a result of this amendment, it formed a network of corporations that allowed it to maintain control over the medallions it sold, including medallion number 1222, which Nana Dada later purchased.

Defendants filed a motion for summary judgment; the evidence the parties submitted in support of their respective positions established the following.

### A. Corporate Defendants

In 1997, Yellow Cab Company sold its medallions to YellowOne and YellowTwo. It sold the name, colors, and dispatch rights to Yellow Cab Management. In 1999, Yellow Cab

Company changed its name to CRA Cab Company. CRA owns a number of vehicles that are leased to Yellow Cab Management and to which a medallion owned by YellowOne or YellowTwo would be affixed.

A City of Chicago ordinance requires all medallion holders to be affiliated with an affiliation licensed by the City. Chicago Municipal Code §9-112-080(b)(7) (amended November 15, 2000). Yellow Cab Affiliation is one of 21 such affiliations. YellowOne and YellowTwo entered into a loan servicing agreement with Yellow Cab Affiliation wherein Yellow Cab Affiliation agreed to collect loan payments owed to YellowTwo or the assignee of the note, which Yellow Affiliation would remit to the lender.

Yellow Cab Management, which was incorporated on December 8, 1997, provided a number of services to Yellow Cab Affiliation, including radio dispatching, cash-collecting services, handling of accounts, preparation of financial documents, and the use of the name and colors. Yellow Cab Management also managed a fleet of cabs with medallions owned by YellowOne or YellowTwo that were affixed to cabs owned or leased by Yellow Cab Management.

### B. Nana Dada's Purchase

On April 6, 2001, YellowTwo entered into a transfer agreement and "Medallion Only Purchase Agreement" with Nana Dada. Atif was the president and sole shareholder of Nana Dada. Nana Dada agreed to pay YellowTwo $64,000 for medallion number 1222. Yellow Cab Management sold Nana Dada the cab to which the medallion was attached for $500.

YellowTwo financed Nana Dada's purchase of the medallion and subsequently assigned

the note to Transit Funding, while Transit Capital financed $2,313 of ancillary costs. Nana Dada was not required to finance the medallion purchase through YellowTwo but, rather, could have used a third party that provides medallion financing, such as Ravenswood Bank, Elk Funding, Banco Popular, or Medallion Funding.

YellowTwo and Transit Capital received a security interest in both the vehicle and the medallion in return for providing Nana Dada with financing. YellowTwo also held a security interest in Nana Dada's shares of stock. Atif, on behalf of Nana Dada, executed a power of attorney for Transit Capital and YellowTwo. It permits YellowTwo to enforce its rights under the security agreement and pledge agreement if Nana Dada defaults on its payment obligations to YellowTwo. Paragraph 12 of the security agreement provides that the power of attorney that Nana Dada signed is only effective upon default. In addition, paragraphs 5 and 6 of the pledge agreement provide that YellowTwo only has the right to use the stock power option upon a default by Nana Dada.

The purchase agreement required Nana Dada to become a member of the Yellow Cab Affiliation for a minimum of three years. Accordingly, Nana Dada entered into a taxicab affiliation agreement with Yellow Cab Affiliation. By joining the Yellow Cab Affiliation, Nana Dada could use Yellow Cab Affiliation's colors and dispatching services and receive other benefits. In return, Nana Dad paid a fixed weekly fee. Yellow Cab Affiliation also became the registered agent for Nana Dada. We discuss the terms of the affiliation agreement in more detail below. Nana Dada also purchased insurance in its name from American Country Insurance Company in the amount required by the Chicago ordinance.

After Nana Dada purchased the cab and medallion, Atif began driving the cab. He also leased the cab to Malik for a weekly rental fee set by Atif. Malik was driving the cab when the accident occurred.

Nana Dada, Atif, and Malik were not employed by the Yellow Cab Affiliation. It did not pay any salary to Nana Dada, Atif, or Malik, did not withhold taxes on their behalf, and had no authority to determine the hours that the cab was operated, where it was operated, and which customers were to be picked up. Neither Yellow Cab Affiliation nor the other corporate defendants had the right to share in any profits made through use of the medallion or the cab. The only money paid to Yellow Cab Affiliation by Nana Dada was the weekly affiliation payment in return for the services provided by Yellow Cab Affiliation, which Nana Dada was required to make even if the cab was not used that week. The weekly payments to Yellow Cab Affiliation included affiliation dues, insurance premiums, and loan repayment. This payment was fixed and was not contingent on the profits earned by Nana Dada.

As president of Nana Dada, Atif was responsible for storage, maintenance, and repairs, and he alone controlled where he wished to repair and maintain the car. Atif had the cab repaired at Medina Auto, which has no relationship with Yellow Cab Affiliation. He or Malik paid for the gas used during cab operations. Atif's cab was not required to pick up fares identified through the Yellow Cab Affiliation's Gandalf dispatch system.

The trial court granted defendants' motion for summary judgment and denied plaintiff's motion for reconsideration. Plaintiff filed a second motion for reconsideration, which argued for the first time that section 9-112-390 of the Chicago Municipal Code established an agency

relationship between Malik and Yellow Cab Affiliation as a matter of law. Chicago Municipal Code §9-112-390 (amended November 15, 2000). The trial court entertained the motion but denied it.[1] This appeal followed.

## II. ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, and other evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2004). "Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle [him] to a judgment." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). Summary judgment is a drastic means of resolving litigation and should only be allowed when the right of the moving party is clear and free from doubt. *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). An appellate court's review of a grant of summary judgment is *de novo*. *Woods v. Pence*, 303 Ill. App. 3d 573, 576 (1999).

### A. Agency Relationship Pursuant to Ordinance

Plaintiff contends that section 9-112-390 of the Chicago Municipal Code made Nana Dada the agent of the Yellow Cab Affiliation "as a matter of law." Although plaintiff raised this argument for the first time in his second motion for reconsideration, the trial court entertained the

---

[1] The trial court also dismissed the claims against Stamford Capital Group, the Corrigan Trust, American Country Insurance, and Muhammed Atif. Plaintiff has elected not to pursue the dismissal of these claims on appeal. He has also abandoned his alter ego argument.

argument and denied the motion. Therefore, while plaintiff asserts in his brief that "[t]his is an appeal from an order granting summary judgment," we find that he is appealing the denial of his second motion to reconsider.

The purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the trial court's previous application of existing law. *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1140 (2004). Plaintiff's second motion to reconsider invoked none of these grounds; instead, it presented the new legal theory that section 9-112-390 of the Chicago Municipal Code created an agency relationship between Nana Dada and the Yellow Cab Affiliation.

A motion to reconsider based on the submission of new matters, such as new arguments or legal theories not presented during the pendency of the original motion for summary judgment, is reviewed under an abuse-of-discretion standard. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002). See *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989) (submitting new matter on a motion to reconsider after a motion for summary judgment has been granted "lies in the discretion of the trial court"). Such a motion essentially seeks a " 'second bite at the apple,' *i.e.*, requiring the trial court to determine whether it should admit these new matters into evidence and, in turn, reconsider its decision based on them." *O'Shield*, 335 Ill. App. 3d at 838.

Plaintiff's second motion was improper, as Supreme Court Rule 274 provides, "A party may make only one postjudgment motion directed at a judgment order that is otherwise final."

1-06-1256

210 Ill. 2d R. 274. While defendants contend that plaintiff waived his argument, a trial court has the discretion to address new issues presented for the first time in a motion to reconsider "where there is a reasonable explanation for why the additional issues were not raised at the original hearing." (Emphasis omitted.) *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 376 Ill. App. 3d 1006, 1022 (2007). Throughout the extensive briefing on defendants' motion for summary judgment and plaintiff's first motion for reconsideration, plaintiff relied on the Chicago Municipal Code but did not cite section 9-112-390. In its second motion for reconsideration, plaintiff argued that he was "advised" of section 9-112-390 by a law firm representing him in a similar action against a different cab company. Under these circumstances, we cannot say that the trial court erred in denying plaintiff's second motion for reconsideration. Although the trial court denied the second motion for reconsideration, it also entertained the merits of plaintiff's new argument. The trial court held that section 9-112-390 did not establish an agency relationship. This court has previously held that regardless of whether the new matters are admitted through the motion to reconsider, the standard used to review the trial court's application of law to the facts presented always remains *de novo*. *O'Shield*, 335 Ill. App. 3d at 838.

Section 9-112-390 provides as follows:

"Every taxicab shall have the public passenger vehicle license number and the cabman's name and telephone number painted in *** the center of the main panel of the rear doors *** of the vehicle ***. If the cabman is affiliated or identified with any affiliation, as described in Section 9-112-070, the affiliation's

-8-

color scheme, trade name or emblem and telephone number shall be substituted and, without being limited thereto, any of these indicia of affiliation shall be sufficient to establish the responsibility of the affiliation in the operation of the taxicab. *** The commissioner may also provide, pursuant to rule, that other information of interest to the public, including, but not limited to, the licensee's or affiliation's website or e-mail address and/or the current taximeter rates if fare be permanently and prominently affixed to the outside of the vehicle. No other name, number, emblem, or advertisement of any kind excepting signs required *** by this subchapter, official license emblems or metal plate shall be painted or carried so as to be visible on the outside of any taxicab unless otherwise required by state law."

Chicago Municipal Code §9-112-390 (amended November 15, 2000).

Plaintiff relies on the language of the ordinance that the use of "these indicia shall be sufficient to establish the responsibility of the affiliation in the operation of the taxicab." Plaintiff argues that since the cab involved in the accident carried the Yellow Cab color scheme and logo and Nana Dada was a member of the affiliation operated by the Yellow Cab Affiliation, the affiliation was, "as a matter of law," the principal for Nana Dada.

Courts apply the principles of statutory construction to ordinances. *City of Evanston v. O'Leary*, 244 Ill. App. 3d 190, 193 (1993). The goal of a court when construing a statute is to ascertain the legislature's intent, "and the surest indicator *** is the language in the statute." *Department of Public Aid ex rel. Schmid v. Williams*, 336 Ill. App. 3d 553, 556 (2003). If the language of an ordinance is clear and unambiguous, the court must interpret it according to its

1-06-1256

terms without resorting to aids of construction. *La Salle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 786 (2001). The court may consider the reason and necessity for the statute and the evils it was intended to remedy, and will assume that the legislature did not intend an unjust result. *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309 (2001).

We agree with the trial court that plaintiff took section 9-112-390 out of context. "[T]he statute should be evaluated as a whole; each provision should be construed in connection with every other section." *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994).

The trial court found the purpose of section 9-112-390 is to make certain that a particular affiliation is identified in relation to a taxicab so that city requirements are followed and are capable of enforcement. The Code defines "affiliation" as

> "an association of public passenger vehicle license holders organized and
> incorporated for the purpose of providing its members with a Chicago business
> address, telephone number registered to the affiliation, color scheme where
> applicable, a trade name or emblem where applicable, a two-way radio dispatch
> system, insurance and the designation of an authorized registered agent." Chicago
> Municipal Code §9-112-010 (amended November 15, 2000).

This definition did not provide that the purpose of taxicab affiliations was to serve as the insurer for affiliates who personally own medallions and operate their cabs. The title of section 9-112-390 --"License number and driver identification--Display"-- also militates against plaintiff's interpretation. "Interpreting a statute as a whole means interpreting a specific provision in the context of other parts of the statute, including the heading under which the provision appears."

-10-

1-06-1256

*Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 659 (2005).

In addition, these requirements, which become the "responsibility" of the affiliation under section 9-112-390, are reflected in other sections of the Code. See Chicago Municipal Code §§9-112-230(c) (affiliation cannot dispatch a cab for purposes of providing transportation to a customer unless the vehicle is properly licensed), 9-112-230(e)(1) (affiliation is responsible for ensuring that dispatch equipment is activated an operating at all times when the cab is in service), 9-112-215(e) (affiliations have a duty to ensure compliance of affiliated drivers to rules regarding underserved areas) (amended November 15, 2000).

We further agree that plaintiff's interpretation would render other parts of the Code superfluous or meaningless. See *Bonaguro*, 158 Ill. 2d at 397. For example, section 9-112-100 provides that the commissioner may investigate "the financial ability of the applicant *** to pay all judgments and awards [that] may be rendered for any cause arising out of the operation of a public passenger vehicle during the license period." Chicago Municipal Code § 9-112-100 (2006). The Code also requires all licensees to "pay each judgment or award for loss or damage in the operation or use of a public passenger vehicle rendered against the licensee." Chicago Municipal Code §9-112-240 (2001). Furthermore, "licensees" are required to carry a minimum of public liability and property damage insurance "to secure payment by the licensee, his agents, employees or lessees of any final judgment or settlement *** resulting from any occurrence caused by or arising out of the operation or use of any of the licensee's public passenger vehicles." Chicago Municipal Code §9-112-220 (2006). If affiliations were, as a matter of law, the principals of their affiliates, the City would not need to investigate the financial ability of

-11-

licensees to pay judgments or make certain that affiliates--but not the affiliations--have sufficient insurance. Plaintiff's interpretation of section 9-112-390 would render these sections on the financial responsibility of licensees meaningless.

Plaintiff, citing *Schedler v. Rowley Interstate Transportation Co.*, 68 Ill. 2d 7 (1977), compares this case to the regulation of the trucking industry. In *Schedler*, a trucking company and a driver-owner entered into a lease agreement in the form prescribed by the Interstate Commerce Commission. The ICC regulations governing the lease agreement required that the lease provide for " 'the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of *** [the] lease.' [Citation.]" *Schedler*, 68 Ill. 2d at 11. The regulations also placed a duty upon authorized carriers to "remove any legend, showing it as the operating carrier, displayed on such equipment," before relinquishing possession of the equipment. *Schedler*, 68 Ill. 2d at 11-12. When the driver was operating the truck for his own use, he had an accident. The trucking company's name and permit number had not been removed from the truck or concealed pursuant to ICC regulations. Our supreme court noted that the ICC rules and regulations were designed to help fix financial responsibility for injuries to members of the public. *Schedler*, 68 Ill. 2d at 12. The court concluded that "it was the purpose of the regulatory scheme that the carrier-lessee be vicariously responsible to the public for the negligent operation of the leased vehicle without regard to whether at the time in question it was being used in the business of the lessee." *Schedler*, 68 Ill. 2d at 12-13. Accordingly, the court held the trucking company vicariously liable. *Schedler*, 68 Ill. 2d at 12-13.

*Schedler* is distinguishable. Not only does it involve a different industry with different policy implications, but the regulations in *Schedler* specifically required that the lease provide for "the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of *** [the] lease." *Schedler*, 68 Ill. 2d at 11. Nana Dada, not the affiliation, had exclusive possession, control, and use of the cab, and at the time of the accident, the cab and medallion were owned by Nana Dada and leased to Malik.

Therefore, we conclude that section 9-112-390 of the Chicago Municipal Code did not make Nana Dada the agent of the Yellow Cab Affiliation "as a matter of law."

## B. Agency Relationship

Plaintiff next argues that the corporate defendants exercised sufficient control over Nana Dada at the time the accident occurred to establish an agency relationship. The doctrine of *respondeat superior* allows an injured party to hold a principal vicariously liable for the conduct of his or her agent. *Moy v. County of Cook*, 159 Ill. 2d 519, 523 (1994). "While the existence of any agency relationship is usually a question of fact, it becomes a question of law when the facts regarding the relationship are undisputed or no liability exists as a matter of law." *Oliveira-Brooks v. Re/Max International, Inc.*, 372 Ill. App. 3d 127, 134 (2007). "The burden of proving the existence of an agency relationship and the scope of authority is on the party seeking to charge the alleged principal." *Anderson v. Boy Scouts of America, Inc.*, 226 Ill. App. 3d 440, 444 (1992).

The affiliation agreement provided that "[e]ach party hereto acknowledges that it is an

independent contractor and affirms that nothing contained herein shall be construed as creating any employer-employee, principal-agent, or joint venture relationship between the parties." "Nevertheless, the declaration of the parties is not controlling where the conduct of the parties demonstrates the existence of an agency relationship." *Oliveira-Brooks*, 372 Ill. App. 3d at 134. In *Yellow Cab Co. v. Industrial Comm'n*, 238 Ill. App. 3d 650, 652 (1992), the court held,

" 'No one factor may determine what relationship is between parties in a given case. It may be necessary to consider a number of factors \*\*\*, such as the right to control the manner in which the work is done, the method of payment, the right to discharge, the skill required in the work to be done, and who provides the tools, material, or equipment. \*\*\*' [Citation.]" *Yellow Cab Co.*, 238 Ill. App. 3d at 652.

" 'Of these factors, the right to control the manner in which the work is done is the most important in determining the relationship.' [Citation.]" *Yellow Cab Co.*, 238 Ill. App. 3d at 652; *Knapp v. Hill*, 276 Ill. App. 3d 376, 380 (1995).

At the time of the accident, Nana Dada owned the cab, medallion, and meter. From the outset, this factor distinguishes the case at hand from *Davila v. Yellow Cab Co.*, 333 Ill. App. 3d 592 (2002), and other leased-cab cases. See *Yellow Cab Co.*, 238 Ill. App. 3d 650; *Yellow Cab Co. v. Industrial Comm'n*, 124 Ill. App. 3d 644 (1984). Atif, the president of Nana Dada, set the operating hours for the cab and paid all expenses for the cab, including gas, repairs, insurance, parking tickets, and fines. He was not required to have the cab repaired at a particular repair shop, nor was his cab required to pick up fares identified through the affiliation's dispatch system.

Atif did not have to report the location of the cab while driving, maintain a trip sheet, keep a written record of fares, or report fares collected to any of the Yellow entities. The Yellow Cab Affiliation did not pay any salary to Nana Dada, Atif, or Malik, did not withhold taxes on their behalf, and did not have the right to share in any profits made through use of the medallion or the cab.

Plaintiff relies on a number of other factors, "various contractual restraints" imposed by the affiliation agreement and financing documents, in support of his argument that the Yellow entities exercised control over "every other aspect of [Nana Dada's] business." He argues that the trial court erred when it viewed these factors "in isolation" instead of considering them together.

First, plaintiff argues that the Yellow Cab Affiliation requires its affiliates to obtain approval as a "prerequisite to selling or transferring a medallion to a third party." According to plaintiff, this decision is at the Yellow Cab Affiliation's sole discretion, which means that it "can deny approval of medallion transfers for its own benefit and can ignore what might be best for the medallion holder, so long as its decision is not arbitrary."

Contrary to plaintiff's argument, the provisions that plaintiff relies on are conditions precedent that will release the licensee from the affiliation agreement, not "prerequisite approval" for transfers of medallions. Paragraph 10(g) of the agreement provides that the affiliation may terminate the agreement if the licensee transfers the medallion or its rights under the agreement without the written approval of the "Affiliation as to its rights under this agreement." Similarly, paragraph 11 provides that when the medallion has been transferred in accordance with

"applicable law," the licensee, at the Yellow Cab Affiliation's sole discretion, will be released from its obligations under the agreement, as long as the licensee transfers to the buyer its rights under the agreement and the "Affiliation shall have consented in writing to the assignment." As defendants correctly note, courts have upheld limiting the ability of a party to be released from its contractual obligations. See *MXL Industries, Inc. v. Mulder*, 252 Ill. App. 3d 18, 25-29 (1993). Furthermore, section 9-112-080 requires taxicab affiliations to verify that drivers hired by affiliates are licensed chauffeurs with a record of safe operations. Chicago Municipal Code §9-112-080 (amended November 15, 2000).

Plaintiff argues that Yellow Cab Affiliation's right to approve the transfer of a medallion is a significant interference with the right of a private individual to deal with his property. Plaintiff cites *Board of Education of Glen Ellyn Community Consolidated School District No. 89 v. Department of Revenue*, 356 Ill. App. 3d 165 (2005), which held that a school district did not qualify for a statutory tax exemption because it did not qualify as an "owner" of the property. The school district was not permitted to "assign, encumber, otherwise alienate its interest in the property," and its right to make alterations to the property and remove structures was restricted. *Glen Ellyn*, 356 Ill. App. 3d at 176. Here, Nana Dada owns, rather than leases, the medallion and taxicab.

Plaintiff argues that the financing agreement governing Nana Dada's purchase of the medallion also demonstrates defendants' control because it required Nana Dada to join the affiliation and defined termination of its membership with the affiliation as an "event of default." Plaintiff concedes that section 9-112-080(b)(7) requires cab owners to join an affiliation (Chicago

Municipal Code §9-112-080(b)(7) (amended November 15, 2000)); however, he contends that requiring medallion owners to join "this particular organization" rather than "some affiliation" is evidence of defendants' intent to keep control over the medallions. To the contrary, Nana Dada's membership in the Yellow Cab Affiliation was security for the lender. Furthermore, the required membership was only for a minimum of three years, a limited period of time intended to ensure that Nana Dada would make loan payments for the initial part of the loan term.

Plaintiff also relies on the power of attorney that Atif and Nana Dada gave YellowTwo and Transit Funding. This power of attorney, however, was contingent on an "event of default" and was limited to what was necessary to "effect the titling, registration, and/or conveyance" of the medallion and cab. In addition, while Atif transferred his shares in Nana Dada to YellowTwo and appointed YellowTwo as his attorney in fact to effect that transfer, neither YellowTwo nor its assignee, Transit Funding, had any rights to the collateral unless Nana Dada was in default on its loan obligations. See generally *Northern Trust Co. v. Burlew*, 171 Ill. App. 3d 1000, 1003-04 (1988) (where the debtor pledged shares of its common stock to secure bank loans and the note granted the bank the right to sell the stock upon default, there was nothing in the record to suggest that the relationship was anything other than creditor-debtor).

Plaintiff next argues that defendants controlled Nana Dada's liability insurance coverage and induced affiliates to keep their coverage at an artificially low level. We disagree. Section 9-112-220 of the Code requires licensees to carry a minimum of $350,000 in liability insurance. The affiliation, by facilitating affiliates' purchase of the minimum amount of insurance required by section 9-112-220, was simply complying with this law. See Chicago Municipal Code §9-112-

1-06-1256

010(a) (amended November 15, 2000) (defining "affiliation" as "an association of public passenger vehicle license holders organized and incorporated for the purpose of providing its members with *** insurance"). In addition, the affiliation agreement shows that the affiliation offered additional insurance coverage beyond the $350,000 minimum. See *Oliveira-Brooks*, 372 Ill. App. 3d at 136.

We also disagree with plaintiff's contention that the affiliation agreement's requirement that affiliates purchase insurance from American Country or another approved insurer was another element of the affiliation's control over Nana Dada. Yellow Cab Affiliation agreed to purchase insurance for its fleet, including its affiliates pursuant to the taxicab insurance agreement between Yellow Cab Affiliation and American Country Insurance. However, the affiliation agreement states that the affiliation will provide affiliates with insurance "in an amount of not less than $350,000, *** as written by American Country or any other duly licensed insurance company with an overall rating of 'A' or higher as determined by the most recent edition of Best's Insurance Reports" or an equivalent indemnification authorized by law. Therefore, the affiliation agreement between Nana Dada and Yellow Cab Affiliation does not require that the insurance be purchased from American Country. Furthermore, Yellow Cab Affiliation was, again, simply acting in conformity with the Code, which requires that insurance be provided by "solvent and responsible insurers" approved by the commissioner. Chicago Municipal Code §9-112-220 (2006).

Plaintiff contends that Yellow Cab Affiliation had a strong incentive to keep affiliates' insurance coverage low because in the taxicab insurance agreement, American Country agreed to

"share profits" with it over a rolling three-year time period as long as "no loss determination shall exceed $350,000 per occurrence." In addition, American Country pays a commission to Lower Cross Agency for procuring the policies issued to the Yellow Cab Affiliation. Lower Cross Agency is a nondefendant subsidiary of Lower Cross Corp.; plaintiff argues that Corrigan and his family are the beneficiaries of the entities that receive the fees and commissions. While this evidence may demonstrate a financial motive on the part of the Yellow entities, it does not demonstrate that they actually exercised control over Nana Dada. Furthermore, to the extent that plaintiff relies on an alleged fiduciary relationship between Yellow Cab Affiliation and its affiliates, his argument is waived because he raised it for the first time on appeal and did not cite any authority in his opening brief. 210 Ill. 2d R. 341(h)(7).

Plaintiff also relies on the affiliation agreement's requirement that Nana Dada to equip its vehicle with radio equipment purchased from Yellow Cab Affiliation and a related equipment acceptance and responsibility agreement's requirement that it have the equipment repaired at facilities designated by Yellow Cab Affiliation. Plaintiff again concedes that this requirement was simply a means of carrying out the duty established by the Code, which requires affiliations to ensure that radios are operating.

Finally, plaintiff relies on Yellow Cab Affiliation's status as registered agent for Nana Dada. This was done pursuant to section 9-112-010, which defines an affiliation as an association of public passenger vehicle license holders organized for the purpose of, *inter alia*, the "designation of an authorized agent." Chicago Municipal Code §9-112-010(a) (amended November 15, 2000).

Illinois courts have previously refused to find an agency relationship based on defendants' attempts to comply with or set standards in conformity with a statute. In *Knapp v. Hill*, 276 Ill. App. 3d 376 (1995), for example, a student in a high school automotive repair class was returning his car to the parking lot at his teacher's request when another student jumped on the hood and was thrown off. The plaintiff, the injured student's estate, argued that the first student was an agent for the school because it was responsible for directing the method and manner of removing cars from the shop area. We found, however, that although the school district exercised control over its students, such control alone was insufficient to establish a principal-agent relationship under the circumstances alleged. *Knapp*, 276 Ill. App. 3d at 380. "[T]he 'control' necessary to support the creation of a principal-agent relationship is the same 'control' implicit in the nature and the undertaking of the education process." *Knapp*, 276 Ill. App. 3d at 380. This control was grounded in the nature of the education process, as recognized by the Illinois School Code. *Knapp*, 276 Ill. App. 3d at 380-81. See also *Commerce Bank v. Youth Services of Mid-Illinois, Inc.*, 333 Ill. App. 3d 150, 155 (2002) (no agency relationship when defendants "merely monitor[ed] 'licensing standards' " set by Department of Children and Family Services regulations); *Hansen v. Caring Professionals, Inc.*, 286 Ill. App. 3d 797 (1997).

Plaintiff also relies on the fact that Yellow Cab Affiliation requires its affiliates to submit to inspections and paint their cabs with its color and insignia. Plaintiff acknowledges that Yellow Cab Affiliation's control of affiliates' use of the logo and color "would not alone be sufficient to create a principal-agent relationship" but insist that it "remains a factor to be weighed with the other control factors." As plaintiff concedes, however, the Lanham Act (15 U.S.C. §1051 *et seq.*

(2006)) requires that licensors of trademarks control their use so the public is not deceived, and maintaining such control "does not automatically saddle the licensor with the responsibilities under state law of a principal for his agent." *Oberlin v. Marlin American Corp.*, 596 F.2d 1322, 1327 (7th Cir. 1979); *Oliveira-Brooks*, 372 Ill. App. 3d at 135.

Plaintiff further cites the affiliation agreement's requirement that an affiliate not place "any advertising or any other markings on its vehicles" that the affiliation has not approved in "its sole discretion." Section 9-112-300 requires approval by the commissioner before any advertising be displayed on a cab. Chicago Municipal Code §9-112-300 (2006). Not only is the affiliation complying with its obligations under this law, but it has a strong interest in protecting its colors and logo, including any advertising that will be associated with it. *Oliveira-Brooks*, 372 Ill. App. 3d at 135 (mere protection of a trade name does not create an agency relationship).

We conclude that the corporate defendants did not exercise the requisite control over Nana Dada to establish an agency relationship.

### C. Joint Venture

Plaintiff also argues that the corporate defendants acted as joint venturers because they coordinated their actions to govern the ability of Nana Dada to operate its business. The trial court rejected plaintiff's argument because it found a lack of control by defendants.

A joint venture is an association of two or more entities to carry out a single, specific purpose for a profit. *Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill. App. 3d 206, 211 (2003). Whether a joint venture exists is a matter of the intention of the alleged joint venturers. *Kaporovskiy*, 338 Ill. App. 3d at 211. Even in the absence of a formal agreement, the existence of

a joint venture may be inferred from circumstances demonstrating that the parties intended to enter into a joint venture. *O'Brien v. Cacciatore*, 227 Ill. App. 3d 836, 843 (1992). In determining whether the parties intended a joint venture, a court continues the following elements: (1) a community of interest, (2) a proprietary interest in the subject matter, (3) a right to direct and govern the policy, and (4) a sharing in both profits and losses. *Kaporovskiy*, 338 Ill. App. 3d at 211. "Possibly, the most important criterion of a joint venture is joint control and management of the property used in accomplishing its aims." *Herst v. Chark*, 219 Ill. App. 3d 690, 694 (1991). "The party who contends that a joint venture exists has the burden of proving that the parties intended such a relationship." *Yokel v. Hite*, 348 Ill. App. 3d 703, 708 (2004). In the absence of any one of the elements, a joint venture does not exist. *O'Brien*, 227 Ill. App. 3d at 843.

Plaintiff admits that the absence of control of Nana Dada by defendants would defeat a claim that defendants acted as joint venturers. As we have already found insufficient control over Nana Dada to establish an agency relationship, we find that it further defeats his joint venture claim. In addition, the authority that plaintiff relies on is readily distinguishable, as plaintiff compares this case to jurisdiction in a parent-subsidiary context instead of analyzing cases relating to joint ventures. See *Alderson v. Southern Co.*, 321 Ill. App. 3d 832 (2001).

### III.  CONCLUSION

For the foregoing reasons, we affirm the trial court's decisions.

Affirmed.

CAMPBELL and O'BRIEN, JJ., concur.

1-06-1256

| | |
|---|---|
| Please Use Following Form: | **ERIK T. DANIELS,**<br><br>                                        Plaintiff-Appellant,<br><br>v.<br><br>PATTON CORRIGAN; YELLOW CAB MANAGEMENT, INC. d/b/a YELLOW CAB COMPANY; SHAHZAD MAHLIK; YELLOW CAB COMPANY; YELLOW CAB AFFILIATION, INC.; YELLOWONE, LLC; YELLOWTWO, LLC; CRA CAB COMPANY d/b/a METRO YELLOW YELLOW CAPITAL CORPORATION; YELLOW CAB SERVICES OF AMERICA; YELLOW HOLDINGS INC.; TRANSIT CAPITAL, LLC; TRANSIT FUNDING GROUP; and LOWER CROSS CORPORATION,<br><br>                                        Defendants-Appellees.<br><br>(American Country Insurance Company; Stamford Capital Group; the Dorothy Corrigan Trust; Muhammed Atif; and Nana Dada, Inc.,                    Defendants.) |
| Complete TITLE of Case | |
| Docket No.<br><br>COURT<br><br>Opinion Filed | No. 1-06-1256<br>Appellate Court of Illinois<br>First District, FOURTH Division<br><br>March 31, 2008<br>(Give month, day and year) |
| JUSTICES | JUSTICE MICHAEL J. MURPHY delivered the opinion of the court:<br>Campbell, and O'Brien, JJ.,                                        concur.<br><br>                                        dissents. |
| APPEAL from the Circuit Court of Cook County, Illinois. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>Honorable Jennifer Duncan-Brice, Judge Presiding |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.<br>**FOR APPELLANT:**<br>Michael W. Rathsack, 111 W. Washington Street, Suite 962, Chicago, IL  60602, Phone: 312-726-5433<br>Stephan D. Blandid, Antonio M. Romanucci, Vicki Voukidis Blum and Michael W. Rathsack, *of counsel*<br><br>**FOR APPELLEES:**<br>Frances P. Kao, Justin L. Heather, Carmin D. Ballou, Skadden Arps Slate Meagher & Flom LLP. 333 W. Wacker Dr., Suite 2100, Chicago, IL  60606, Phone: 312-407-0700<br><br>Robert Comfort, David Macksey, Johnson & Bell Ltd., 33 W. Monroe Street, Suite 2700, Chicago, IL  60603 Phone: 312-372-0770<br><br>Michael Resis, SmithAmundsen LLC, 150 N. Michigan Avenue, Suite 3300, Chicago, IL 60601 Phone 312-894-3200 |