2017 IL App (1st) 153402

THIRD DIVISION
April 26, 2017

No. 1-15-3402

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE CITY OF CHICAGO, ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 L 51003 |
| | ) | |
| | ) | |
| EXPEDIA, INC.; HOTELS.COM, L.P.; and | ) | The Honorable |
| HOTWIRE, INC.; | ) | Robert Lopez Cepero and |
| | ) | Edmund Ponce De Leon, |
| Defendants-Appellants. | ) | Judges, presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from the Cook County circuit court's order granting summary judgment in favor of the city of Chicago (the City) and against certain online travel companies (OTCs), namely Expedia, Inc., and its subsidiaries, Hotels.com, L.P., and Hotwire, Inc. (defendants).[1] Specifically, the court granted the City judgment on its claim that defendants had failed to collect, and remit to the City, the correct amount of the Chicago Hotel Accommodations Tax (CHAT) (Chicago Municipal Code § 3-24-010 *et seq.* (1990)). Defendants now appeal.

---

[1]The City's complaint also sought relief against several other OTCs who were ultimately dismissed from this action by agreement.

¶ 2                                I. BACKGROUND

¶ 3     The City enacted the CHAT ordinance in 1973. That ordinance has at all times required that "every owner, manager or operator of hotel accommodations" secure from the hotel's lessee or tenant, and remit to the City's Department of Revenue (Chicago Municipal Code § 3-24-040 (amended Nov. 16, 2011)), a tax on "the gross rental or leasing charge" (Chicago Municipal Code § 3-24-030 (amended Nov. 16, 2011)). Well after the CHAT ordinance was enacted, the Internet was invented and, eventually, profitable OTCs began operating. The City has joined numerous taxing authorities who have attempted to apply established tax provisions to OTCs' online business model.[2]

¶ 4     The result in other cases has often depended upon the precise statutory language at issue and, thus, such decisions are of limited assistance in considering the CHAT ordinance. See *Independent Trust Corp. v. Kansas City Bankers Surety Co.*, 2011 IL App (1st) 093294, ¶ 24 (observing that while other jurisdictions may provide guidance, their decisions are not binding, and we must decide a case consistently with Illinois law); see also *Orbitz, LLC v. Indiana Department of State Revenue*, 66 N.E.3d 1012 (Ind. 2016) (declining to consider decisions from other states because the decisions relied on specific statutory language from those jurisdictions); *City of Birmingham v. Orbitz, LLC*, 93 So. 3d 932, 936 (Ala. 2012) (similar). Consequently, we place minimal reliance on decisions from other jurisdictions. We also restrict our decision to the specific OTCs and record before us. *City of Houston v. Hotels.com, L.P.*, 357 S.W.3d 706, 707 (Tex. App. 2011) (observing that the outcome of similar lawsuits against OTCs in other jurisdictions depended on the evidence introduced in those cases). Furthermore, the record on

---

[2]Prior to this lawsuit, the City had never collected the CHAT from any entity other than a hotel or motel.

appeal is extensive. We therefore recite only those facts necessary to provide the factual and legal basis of this appeal.

¶ 5    Defendants operate websites that provide travel information to consumers while allowing them to book hotel rooms as well as other travel services. To that end, defendants enter into contracts with hotels, although language varies among such contracts. A contracting hotel generally makes rooms available to a defendant's customers but can, at any time, change the quantity of rooms available or the discounted amount that the hotel will charge that defendant for a room (net rate). According to defendants, they merely facilitate reservations, through servers that communicate with hotels' reservation systems. Although defendants do not own or reserve any blocks of hotel rooms, defendants appear as the merchant of record on credit card transactions for reservations made through them. Additionally, defendants forward such reservations to the relevant hotels, which in turn attempt to honor the reservations. In exceptional circumstances, however, a hotel may be unable to honor a particular reservation.

¶ 6    Defendants' websites, albeit with slightly varying language, charge customers a total price consisting of four components: (1) the aforementioned net rate set by the hotel, (2) the defendant OTC's facilitation fee, (3) the tax recovery charge, which reflects tax percentages supplied by the hotel to the defendant OTC, and (4) the defendant OTC's service fees. The first two components are combined into a single room rate. Additionally, defendants inform their customers that the room rate consists of the first two components but do not otherwise provide the specific sums associated with those components.[3] Similarly, the last two components are

---

[3]For example, Expedia's website states that "[t]he room rate displayed on the Website is a combination of the pre-negotiated room rate for rooms reserved on your behalf by Expedia and the facilitation fee retained by Expedia to compensate us for our services."

3

combined into a single line item, without further breakdown.[4] Defendants and hotels contractually agree to keep these figures confidential for the benefit of both the hotels and defendants.

¶ 7 Ultimately, defendants pay a hotel its net rate and the tax recovery charge based on the net rate, which includes taxes such as the CHAT. In turn, Chicago hotels remit the CHAT to the City. Defendants do not, however, apply the CHAT ordinance to their own facilitation or service fees or collect the corresponding amount of tax.

¶ 8 In November 2005, the City commenced this action against defendants for violating the CHAT ordinance (count I). The City also asserted a claim of conversion (count II) and sought the imposition of a constructive trust (count III) as well as an accounting (count IV). Specifically, the City alleged that defendants contracted with hotels for "negotiated discounted room rates" and sold hotel rooms to customers at marked up prices. Notwithstanding these sales, defendants failed to collect and remit the CHAT based on the marked up rate. In their answers, defendants denied that they sold hotel rooms or that they had failed to collect and remit the CHAT. Defendants also asserted that the City's reading of the CHAT ordinance would be unconstitutional and contravene the Internet Tax Freedom Act (ITFA) (47 U.S.C. § 151 note (2000)).

¶ 9 After years of discovery, the parties filed cross-motions for summary judgment. The City's position was that defendants were liable for the unremitted CHAT because their conduct made them owners, managers, or operators of hotels under the ordinance[5] and their share of

---

[4]Expedia's website states that the "tax recovery charges on prepaid hotel transactions are a recovery of the estimated transaction taxes *** that Expedia pays to the hotel supplier in connection with your hotel" and that "[t]he Hotel suppliers remit applicable taxes."

[5]While proceedings were pending, the City amended the ordinance to define "operator" as "any person who has the right to rent or lease hotel accommodations to the public for consideration," including "persons engaged in the business of selling or reselling to the public the right to occupy hotel

4

revenue constituted gross rent. In contrast, defendants maintained that they were merely travel intermediaries who enabled Internet bookings, not hotel owners, managers, or operators subject to the duties imposed by the ordinance. Similarly, the amounts charged for defendants' services did not constitute rent, let alone gross rent.

¶ 10 In June 2013, the circuit court entered partial summary judgment in favor of the City, finding that defendants failed to collect and remit taxes as required by the CHAT ordinance (count I) and, consequently, the City was entitled to an accounting (count IV). Specifically, the court found defendants were operators under the ordinance and their fees were part of the gross rental charge. In light of the pending accounting, the court denied the City summary judgment on its conversion claim (count II), as well as its request for a constructive trust (count III). The court denied defendants' motion in its entirety and later denied their motion for reconsideration. Furthermore, the court also filed an amended order finding that defendants constituted hotel managers.

¶ 11 Following additional cross-motions for summary judgment, the circuit court found defendants were required to pay the City penalties under count I because there was no reasonable cause to believe the CHAT ordinance applied only to the net rate charged by hotels. Additionally, the court found that the damages to be imposed under count I would not compensate the City for breakage situations where a defendant OTC failed to transfer to hotels the tax collected on the net rate. Accordingly, the court imposed a constructive trust on those amounts under count III.

---

accommodations, whether on-line, in person or otherwise." Chicago Municipal Code § 3-24-020 (amended at Chi. City Clerk J. Proc. 15,814 (Nov. 13, 2007)). In 2014, the City added to that definition "persons engaged in the business of facilitating the rental or lease of hotel accommodations for consideration, whether on-line, in person or otherwise." Chicago Municipal Code § 3-24-020 (amended at Chi. City Clerk J. Proc. 98,063 (Nov. 19, 2014)).

¶ 12    Finally, the parties filed an agreed accounting report, and the circuit court entered a stipulated final judgment as to damages. The City was awarded, as calculated through the end of 2014, a cumulative judgment of $28,329,302.57 on count I and $773,773.66 on count III, for a total of $29,103,076.23. The court dismissed counts II and IV as moot and stayed the judgment pending defendants' appeal.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, defendants assert that the circuit court erred by entering judgment in favor of the City because the CHAT ordinance does not apply to them or their fees. We agree that the court erroneously determined that the City was entitled to additional tax revenue.

¶ 15                     A. Summary Judgment and Rules of Construction

¶ 16    Summary judgment is proper where pleadings, deposition transcripts, exhibits, and affidavits demonstrate that, when viewed in the light most favorable to the nonmovant, no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. *Fischetti v. Village of Schaumburg*, 2012 IL App (1st) 111008, ¶ 5. We review the circuit court's order granting summary judgment *de novo*. *Daniels v. Corrigan*, 382 Ill. App. 3d 66, 70 (2008). We also interpret ordinances *de novo*. *Steenes v. MAC Property Management, LLC*, 2014 IL App (1st) 120719, ¶ 17.

¶ 17    Rules of statutory construction apply equally to ordinances. *Daniels*, 382 Ill. App. 3d at 72. An ordinance should be considered as a whole, interpreting every provision with respect to every other provision. *Id*. Similarly, courts must construe ordinances so that no term is made superfluous. *Sienna Court Condominium Ass'n v. Champion Aluminum Corp.*, 2017 IL App (1st) 143364, ¶ 109. When a term is undefined, we may consider the term's ordinary and popularly understood meaning and consult a dictionary. *Steenes*, 2014 IL App (1st) 120719, ¶ 20. In

6

addition, courts must interpret an unambiguous ordinance in accordance with its terms, without relying on other aids of construction. *Daniels*, 382 Ill. App. 3d at 72. Moreover, courts must strictly construe taxing statutes against the government and in favor of the taxpayer, taking care not to implicitly enlarge the statute's language beyond its clear import. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202 (1989).[6]

¶ 18                                    B. The CHAT Ordinance

¶ 19      Aside from the percentage set forth in the ordinance, section 3-24-030 has at all relevant times provided that "[t]here is hereby imposed and shall immediately accrue and be collected a tax, as herein provided, upon the rental or leasing of any hotel accommodations in the City of Chicago, at the rate of three and one-half percent of the gross rental or leasing charge." Chicago Municipal Code § 3-24-030 (amended Dec. 15, 2004). Additionally, section 3-24-040 states that while the hotel's lessee or tenant is to ultimately bear the liability of the tax, "[i]t shall be the duty of every owner, manager or operator of hotel accommodations to secure said tax from the lessee or tenant of said hotel accommodations and pay over to the department of revenue said tax." Chicago Municipal Code § 3-24-040 (amended Dec. 12, 2001). Furthermore, section 3-24-050, titled, "Hotel to secure tax from tenant," states that "[t]he tax herein levied shall be secured by the hotel owner, manager or operator from the lessee or tenant when collecting the price, charge or rent to which it applies." Chicago Municipal Code § 3-24-050 (1990). That section also states that the CHAT "shall be paid to the person required to collect it as trustee for and on behalf of the City of Chicago." *Id*.

---

[6]The circuit court found this principle did not apply because the ordinance intends for a hotel's lessee or tenant, rather than OTCs, to ultimately bear the tax burden. Statutory interpretation, a legal issue, cannot turn on which party is seeking interpretation, however, and, in this instance, the City is demanding that defendants bear the tax burden.

7

¶ 20    Here, the parties dispute, among other things, whether defendants are persons required to collect and remit the CHAT. Specifically, they dispute whether an OTC constitutes an "owner, manager or operator of hotel accommodations," under both the plain meaning of such language and in light of the definition of "operator" added to the ordinance over the course of these proceedings. Chicago Municipal Code § 3-24-020 (amended Nov. 13, 2007) (referring to the online "selling" or "reselling" of the right to occupy hotel accommodations); see also Chicago Municipal Code § 3-24-020 (amended Nov. 19, 2014) (referring to persons "facilitating the rental or lease of hotel accommodations for consideration, whether on-line, in person or otherwise"). Even assuming that defendants sell hotel rooms and were persons statutorily required to collect and remit the CHAT, it does not follow that the "gross rental or leasing charge" includes their facilitation and service fees. Thus, the City is not entitled to additional tax revenue.

¶ 21                    C. Gross Rental or Leasing Charge

¶ 22    The CHAT identifies the applicable tax base as the "gross rental or leasing charge." During the period at issue, however, the CHAT did not define this. Contrary to the City's contention, the plain meaning of "gross rental or leasing charge" does not include defendants' income from online reservations.

¶ 23    Generally, rent constitutes the return to the lessor, by the lessee, for her use of the property. *Midland Management Co. v. Helgason*, 158 Ill. 2d 98, 105 (1994); see also *Travelers Insurance Co. v. First National Bank of Blue Island*, 250 Ill. App. 3d 641, 646 (1993) (defining "rent" as " '[c]onsideration paid for use or occupancy of property. *** [C]ompensation or return of value given at stated times for the possession of lands and tenements corporeal.' " (quoting Black's Law Dictionary (6th ed. 1990))). A lease similarly speaks to "[a] contract by which a

8

rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent." Black's Law Dictionary (10th ed. 2014). Accordingly, to constitute rental or leasing charges, the sums designated as defendants' facilitation and service fees must be sums paid by customers to use or occupy hotel rooms. While the City correctly observes that "gross" means "[u]ndiminished by deduction" (Black's Law Dictionary (10th ed. 2014)), one cannot deduct a sum that did not constitute a rental or leasing charge in the first instance. Because the record shows that defendants' facilitation and service fees are not sums paid for the use of a hotel room, we need not deduct them in order to find that they are not part of the gross rental or leasing charge.

¶ 24    The parties dispute whether the facilitation and service fees are paid in exchange for mere information. Defendants' websites provide a variety of information, such as reviews and available amenities, and enable users to conveniently compare hotels. As the City argues, however, such information is itself gratuitous. An individual may compare hotels on a defendant OTC's website but ultimately pay that OTC nothing. To be sure, a defendant OTC may attempt to recoup overhead expenses related to providing information in setting the amounts that its customers ultimately must pay for that OTC's facilitation and servicing of a reservation, just as a supermarket may incorporate the expense of advertising into the price of a banana. Nonetheless, a defendant OTC's customers do not purchase the information itself, just as a supermarket's customer does not purchase the jingle that brought him into the store to buy that banana.

¶ 25    Once a person has visited a defendant's website, however, that defendant provides that visitor with the convenience of making a reservation without leaving the website or picking up the phone. This convenience is even more valuable to a customer who needs to book services in addition to hotel accommodations and, thus, can avoid making multiple purchases through

multiple merchants. In order to take advantage of this convenience, however, a customer must pay the defendant OTC.[7] See *City of Birmingham*, 93 So. 3d at 936-37 (finding the OTCs' customers compensated them for their service, *i.e*., making reservations easier); *City of Houston*, 357 S.W.3d at 715 (similar).

¶ 26 Customers also pay defendants for their prenegotiation activities. A defendant OTC, through contracts negotiated with hotels and others, may be able to combine a hotel's negotiated, discounted net rate with that OTC's fees in a manner that allows customers to obtain hotel rooms at a total price lower than what is otherwise available. Thus, customers pay to receive the benefit of a defendant OTC's negotiations with hotels. This is consistent with defendants' terms and conditions, which specifically inform customers that defendants have prenegotiated certain room rates to facilitate reservations. That defendants must charge sufficient amounts to make a profit does not alter the nature of their fees. No one expects businesses to deliberately operate at a loss, and we question whether the City would have undertaken this lengthy litigation had defendants not been profitable.

¶ 27 Furthermore, while an individual cannot occupy a hotel room without the hotel receiving money for the room, an individual can occupy a hotel room without paying a defendant OTC. As the City acknowledges, that customer could "make reservations directly with the hotel without incurring a fee from the OTCs." But see *Expedia, Inc. v. City of New York Department of Finance*, 3 N.E.3d 121, 127-28 (N.Y. 2013) (finding that a tax on " 'service and/or booking fees that are a condition of occupancy' " applied to OTCs' fees (emphasis omitted) (quoting New York City Local Law No. 43 (2009) § 1 (approved June 19, 2009))); *City of Atlanta v.*

_____

[7]An April 2008 Informational Bulletin released by the Chicago Department of Revenue includes a "Hotel Tax Matrix," addressing whether various common hotel charges are subject to the CHAT. The Matrix states that "Reservation Fees" are not subject to the CHAT, although "Rooms for Resale" are taxable.

*Hotels.com*, 710 S.E.2d 766, 769 (Ga. 2011) (finding that a tax on " 'the consideration received *for occupancy*' " applied to "the retail amount paid for occupancy by someone who will occupy the room," as the consumer could not occupy the room without paying the OTC's retail room rate (emphasis in original) (quoting Atlanta (GA) Municipal Code § 146-77 (eff. May 5, 2011))). The total price paid to a hotel may or may not be more expensive than the total price offered by defendants, but this only supports our determination that defendants charge customers for their prenegotiation services. Accordingly, the record clearly shows that customers pay defendants' aptly named service and facilitation fees in exchange for a convenient manner of making reservations as well as the benefits of defendants' prenegotiations, rather than the right to occupy hotel rooms. See *Village of Bedford Park v. Expedia, Inc.*, 193 F. Supp. 3d 911, 932-36 (N.D. Ill. 2016) (finding that various ordinances taxing "gross rental receipts," or charges for renting did not apply to consideration received by OTCs for aggregating hotel room options and facilitating reservations); *Alachua County v. Expedia, Inc.*, 175 So. 3d 730, 733-34 (Fla. 2015) (finding a tax based on "the total rental charged" did not demonstrate a clear intent to tax OTCs' markup); *St. Louis County v. Prestige Travel, Inc.*, 344 S.W.3d 708, 714 (Mo. 2011) (finding that customers paid the OTC for facilitating a reservation, not for providing a sleeping room); *City of Houston*, 357 S.W.3d at 713-14 (finding " 'the cost of occupancy of any room furnished by any hotel' " did not include the OTC's markup (quoting Houston (TX) Code of Ordinances § 44-102 (eff. Jan. 1, 1991))); see also *City of Goodlettsville v. Priceline.com, Inc.*, 844 F. Supp. 2d 897, 907 n.12 (M.D. Tenn. 2012) (finding that regardless of the parties' characterizations of the OTCs' business, "the reality of how OTCs conduct business will control").

¶ 28     In reaching this determination, we reject the City's contention that the tax base under the CHAT ordinance is the total amount the customer pays a defendant OTC. The City suggests that

the facilitation and service fees must be in the nature of rent because they are collected at the same time as the net rate, *i.e.*, the rent. Under that reasoning, however, the CHAT itself would be rent and therefore subject to the CHAT, a circuitous result indeed. While the City has also stated that the CHAT itself would not constitute rent under the City's total-amount theory, the City has not explained why its reasoning should compel us to find that one component of the total constitutes rent but the other component does not. We decline to adopt the City's unsupportable interpretation. *Cf. Travelocity.com, L.P. v. Director of Taxation*, 346 P.3d 157, 166 (Haw. 2015) (examining a tax "on the gross *income* derived from the sale of services or rental income resulting from all services activities that occur within the state" (emphasis added)). More importantly, the City's interpretation would render the ordinance's reference to "rental or leasing" superfluous.

¶ 29    We are similarly unmoved by the City's observation that customers do not receive a precise breakdown of the four components that equal the total price, as the City has not explained why this imprecision would transforms facilitation and service fees into rent. Additionally, the City observes that the CHAT ordinance requires that tenants receive an invoice of the charge "upon which the hotel accommodations tax shall be stated, charged and shown separately." Chicago Municipal Code § 3-24-050 (1990). Yet, this provision does not form the basis of the City's complaint, and the City has developed no argument showing that this provision entitled it to additional tax revenue. We are not charged with considering whether customers are wise to pay defendants without a fully itemized receipt.

¶ 30    In light of our determination that "gross rental or leasing charge" unambiguously refers to charges in the nature of rent without any deductions, we need not consider the parties' arguments with respect to the CHAT's relatively new definition of this term (Chicago Municipal Code § 3-

12

24-020 (amended Nov. 19, 2014)),[8] which applies to transactions entered into after the period in question here. See *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 298 (2010) (stating that a subsequent statutory amendment may be an appropriate indicator of legislative intent). Because defendants' facilitation and service fees are not part of the "gross rental and leasing charge," we also need not consider whether defendants were persons statutorily required to collect the CHAT. Our determination further renders it unnecessary to consider defendants' constitutional arguments or their challenge under the ITFA.[9] Finally, the City concedes on appeal that that the court erroneously entered judgment in its favor on count III. Accordingly, we reverse the circuit court's order granting the City summary judgment and denying defendants summary judgment. We remand with directions for the court to enter summary judgment in defendants' favor.

¶ 31    Reversed and remanded with directions.

---

[8]See Chicago Municipal Code § 3-24-020 (amended at Chi. City Clerk J. Proc. 98,063 (Nov. 19, 2014)) (defining " 'gross rental or leasing charge' " as "the gross amount of consideration for the use or privilege of using hotel accommodations in the City of Chicago, *** determined without any deduction for costs or expenses whatsoever, but not including charges that are added *** on account of the tax imposed by this chapter" or "separately stated optional charges not for the use or privilege of using hotel accommodations.")

[9]We also deny as moot the defendant OTCs' motion to cite additional authority pertaining to their constitutional challenges.